684 A.2d 605

**COMMONWEALTH of Pennsylvania**

v.

**Eddie ROSADO, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 19, 1996.

Filed Oct. 11, 1996.

18

Karl Baker, Assistant Public Defender, Philadelphia, for appellant.

Peter J. Gardner, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, President Judge Emeritus, and CAVANAUGH and HESTER, JJ.

CERCONE, President Judge Emeritus:

This is a direct appeal from the judgment of sentence entered following a bench trial. We affirm.

The events underlying this appeal transpired at approximately 1:30 in the morning on February 28, 1995. The

victims, Yang Lo and his wife Mui, were asleep with the lights on in the bedroom of their apartment on the second floor of 1824 Germantown Avenue. The victims were suddenly awakened by a "pop, pop, pop" sound and the noise of shattering glass. A shower of plaster fell on them from the ceiling above their bed. Although the victims were uninjured, they found bullet holes riddling both sides of their bedroom windows. Additionally, the walls near the victims' bed and the ceiling directly above the bed were pocked by bullets. *See* N.T. 8/14/95 25–28, 50–52.

The trial court has aptly explained subsequent events in the case as follows:

Police Officer Thomas Winkis and his partner were driving a patrol wagon through the intersection of Fifth and Berks Streets when they also heard a "pop" followed by several other "pops" and saw a muzzle flash coming from Germantown Avenue (N.T. 8/14/95, pp. 9–11). When Police Officer Winkis looked closer, he saw a shadowed figure standing 50 feet from the corner of Germantown Avenue and Fifth Street (N.T. 8/14/95, p. 10). The shadowed figure began running southeast on Germantown Avenue and, then, northbound on Fifth Street towards the patrol wagon driven by Police Officer Winkis (N.T. 8/14/95, p. 11). The figure, later identified as defendant, stopped within 25 feet of the patrol car (N.T. 8/14/95, p. 11, 14–16). At that time, Police Officer Winkis and his partner, both of whom had exited their car, told defendant to drop his weapon (N.T. 8/14/95, pp. 11–12, 47). Police Officer Winkis' partner chased defendant and eventually apprehended defendant on Fifth and Berks Street (N.T. 8/14/95, p. 12). Meanwhile, Police Officer Winkis picked up the gun dropped by defendant and recovered nine used shell casings in front of 1824 Germantown Avenue (N.T. 8/14/95, pp. 12–14, 17). Police Officer Winkis also noticed that only the second floor windows of the building at 1824 Germantown Avenue were shot out (N.T. 8/14/95, pp. 20–23). While in police custody, defendant voluntarily and knowingly confessed to shooting the

windows at 1824 Germantown Avenue (N.T. 8/14/95, pp. 34–47).

Trial Court Opinion filed January 26, 1996 at 2.

The matter was tried before the Honorable Gary S. Glazer, sitting without a jury. The trial judge found appellant guilty of two counts of aggravated assault,[1] and one count each of carrying a firearm on a public street in Philadelphia[2] and possessing an instrument of crime.[3] On October 19, 1995, Judge Glazer sentenced appellant to serve two concurrent mandatory terms of imprisonment of five (5) to ten (10) years for the aggravated assault. The lower court imposed no additional sentence on the remaining charges. Appellant's timely notice of appeal followed. This case presents one issue for our consideration: whether the evidence was sufficient to sustain the convictions for aggravated assault in that the victims did not suffer serious bodily injury and the Commonwealth allegedly failed to establish that appellant possessed the requisite specific intent to cause serious bodily injury.[4]

Our Supreme Court has explained that "the test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the trier of fact could have determined [that] all the elements of the crime have been established beyond a reasonable doubt." *Commonwealth v. Hagan,* 539 Pa. 609, 613, 654 A.2d 541, 543 (1995). The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. *Commonwealth v. Seibert,* 424 Pa.Super. 242, 246, 622 A.2d 361, 363 (1993) (citing *Commonwealth v. Sullivan,* 472 Pa. 129, 150, 371 A.2d 468, 478 (1977) and *Commonwealth v. Libonati,* 346 Pa. 504, 508, 31 A.2d 95, 97 (1943)). The question of any doubt is

1. 18 Pa.C.S.A. § 2702.

2. *Id.* § 6108.

3. *Id.* § 907.

4. Appellant does not challenge the sufficiency of the evidence with regard to his convictions for possessing an instrument of crime or violating the Pennsylvania Uniform Firearms Act.

for the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *Id.*

The proper application of this test requires us to evaluate the entire trial record and all evidence actually received, in the aggregate and not as fragments isolated from the totality of the evidence. *Commonwealth v. Harper,* 485 Pa. 572, 576, 403 A.2d 536, 538 (1979). "[T]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Harper,* 485 Pa. 572, 576, 403 A.2d 536, 538 (1979). The trier of fact is free to believe all, part, or none of the evidence presented. *Commonwealth v. Griscavage,* 512 Pa. 540, 546, 517 A.2d 1256, 1259 (1986). The Superior Court may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Cassidy,* 447 Pa.Super. 192, 195, 668 A.2d 1143, 1144 (1995). *See also Commonwealth v. Bigelow,* 416 Pa.Super. 449, 452–53, 611 A.2d 301, 303 (1992) (on post-verdict motion following a bench trial, the trial judge may not alter a verdict based on redetermination of evidence or credibility, but must view the evidence in the light most favorable to the Commonwealth).

The Commonwealth concedes that appellant did not actually hit the victims with the bullets he fired. However, aggravated assault does not require proof that serious bodily injury was inflicted, but only that an attempt was made to cause such injury. *Commonwealth v. Elrod,* 392 Pa.Super. 274, 277, 572 A.2d 1229, 1231 (1990), *appeal denied,* 527 Pa. 629, 592 A.2d 1297 (1990). *See Commonwealth v. Fierst,* 423 Pa.Super. 232, 241, 620 A.2d 1196, 1201 (1993) (when no serious bodily injury resulted from the accused's actions, a charge of aggravated assault may be sustained if the Commonwealth proves that the defendant attempted to cause another person to suffer serious injuries). For cases involving attempt to commit aggravated assault, the Commonwealth must prove specific intent. *Commonwealth v. Everett,* 408 Pa.Super. 166, 169, 596 A.2d 244, 245 (1991), *appeal denied,*

530 Pa. 639, 607 A.2d 250 (1992); *Commonwealth v. Magnelli*, 348 Pa.Super. 345, 349, 502 A.2d 241, 243 (1985). The crux of appellant's challenge to the sufficiency of the evidence instantly is that the Commonwealth allegedly failed to establish the requisite *mens rea* to support a conviction.

The governing statutory language provides that a person is guilty of aggravated assault if he:

> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; ... [or]

> (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

18 Pa.C.S.A. § 2702(a)(1) & (4). Criminal attempt occurs when a person, "with the intent to commit a specific crime ... does any act which constitutes a substantial step toward the commission of that crime." *Commonwealth v. Lopez*, 439 Pa.Super. 625, 632, 654 A.2d 1150, 1154 (1995) (quoting 18 Pa.C.S.A. § 901(a)). The Crimes Code defines the *mens rea* of "intent" as follows:

> A person acts intentionally with respect to a material element of an offense when:

>> (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

>> (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 Pa.C.S.A. § 302(b)(1). The fact that the accused misapprehended the circumstances, thereby making it impossible for him to commit the crime undertaken, is not a defense to an attempt crime. *Lopez, supra* (citing 18 Pa.C.S.A. § 901(b)).

Attempt, in the context of an assault, is established when the accused "intentionally" acts in a manner which constitutes a substantial or significant step toward perpetrating serious bodily injury in another. *Id.*, 439 Pa.Super. at 633–34, 654 A.2d at 1154. This intent need not be directed at a specific person. *Id.* Circumstantial evidence can prove that

the accused intended to inflict serious bodily injury upon another. *Id.* The finder of fact is free to conclude that the accused intended the natural and probable consequences of his actions to result therefrom. *Id.*

In this case, Detective Steven Mostovyk first explained the procedures followed to protect appellant's constitutional rights before the police initiated interrogation. N.T. 8/14/95 at 37–42. Detective Mostovyk then read into the record the statement appellant gave to the police immediately after his arrest. Appellant told Detective Mostovyk that he had been hired by a business rival of the victims to "shoot out windows." Appellant explained that the rival gave him a "Mac–10," showed him how to operate the weapon, and sent him to 1824 Germantown Avenue. *Id.* at 43–46. The record includes a stipulation that the police firearms examiner, Officer Abdur–Rahim, determined that appellant used a semi-automatic model M–11 manufactured by S.W. Daniel, Inc. The weapon was equipped to carry 32 rounds of ammunition. *Id.* at 55–56. Appellant's statement stressed that, despite the power of this weapon, he only intended to shoot windows:

> I wasn't aiming at people. I just shot at the windows. I was in the street.... All I want to say [is] that John wanted me to shoot the windows. He said he had problems with them. He didn't say what kind of problems. That's all I can say.

*Id.* at 46–47.

The arresting officer, Thomas Winkis, testified that 1824 Germantown Avenue is located in a mixed neighborhood containing both commercial and residential structures. *Id.* at 17. There are three single-family dwellings beside the Lo residence which were occupied as homes on the night of the shooting. *Id.* at 34–35. Mr. Lo explained that his building is a two-story structure with a wholesale store at ground level and an apartment on the second floor. There are separate doors for the living quarters and the business area. Both the first and second floors have windows, and there is an air conditioning unit in one of the windows in the second floor apartment. Mr. and Mrs. Lo reside in the apartment with

their eight year old son. On the night in question, Mr. and Mrs. Lo were sleeping in the front bedroom with the light on. Appellant shot only at the windows of the lighted room on the second floor. He did not shoot any of the windows on the ground floor. *See id.* at 24–36.

The record shows that Judge Glazer carefully considered all of the circumstances of this case before reaching his verdict. *See id.* at 70–71. The trial judge found it to be particularly significant that at 1:30 in the morning, appellant chose to shoot only the lighted windows on the second floor and not the windows on the first floor. On this basis, Judge Glazer concluded that the circumstantial evidence was sufficient to support the inference that appellant did not intend merely to destroy property. Rather, his selection of the lighted windows indicates that appellant intended to discharge his weapon into an occupied portion of the building for the purpose of inflicting serious bodily harm on human beings:

> In the instant case, defendant claims that there was insufficient evidence to sustain his conviction for both counts of aggravated assault. On February 28 1995, approximately at 1:39 a.m., both victims were in the front bedroom on the second floor of the building located at 1824 Germantown Avenue. The lights were on in the bedroom, which indicated the possible presence of people in the bedroom. Defendant, as he voluntarily admitted to the police, shot out the windows at 1824 Germantown Avenue. Defendant chose not to shoot out the windows of the closed wholesale grocery store located on the first floor of 1824 Germantown Avenue, but instead, elected to shoot out only the windows of the second floor residence. Based on this overwhelming evidence, this Court, within its province as trier of fact, could reasonably conclude that defendant intended to cause serious bodily injury upon both victims, which would be a natural and probable consequence of defendant's act of shooting at the victims' bedroom windows.

Trial Court Opinion at 4 (citations omitted).

As we previously stated, the intent to commit aggravated assault is established when the accused intentionally

acts in a manner which constitutes a substantial or significant step toward perpetrating serious bodily injury upon another. *Lopez*, 439 Pa.Super. at 632, 654 A.2d at 1154. The Commonwealth correctly notes that this Court has found the requisite intent to commit aggravated assault when the accused has fired a gun into a building he knew was occupied. *See Commonwealth v. Eaddy*, 419 Pa.Super. 48, 614 A.2d 1203 (1992), *appeal denied*, 534 Pa. 636, 626 A.2d 1155 (1993). We have also held that discharging a weapon into a structure in which people live is enough to demonstrate the intent to commit aggravated assault. *Commonwealth v. Hunter*, 434 Pa.Super. 583, 586, 644 A.2d 763, 764 (1994), *appeal denied*, 542 Pa. 661, 668 A.2d 1125 (1995). "Because the possibility exists that a person in the home could be harmed if someone were to shoot into the home, an attempt to cause serious bodily harm to such a person can be inferred." *Id.*

The trial court was cognizant of the fact that appellant told the police that he did not know that the victims used the second floor of their grocery business as their residence. However, Judge Glazer was free to conclude that this assertion was not credible in light of all of the surrounding circumstances of this case. *Griscavage, supra.* On appeal, this court may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Cassidy, supra.* We conclude that the evidence adduced at trial was sufficient to support Judge Glazer's determination that appellant's act of repeatedly discharging an M–11 semi-automatic weapon into the lighted second story windows of Mr. and Mrs. Lo's bedroom demonstrated that appellant possessed the specific intent to inflict serious bodily injury upon the occupants of the room.

Judgment of sentence affirmed.

CAVANAUGH, J., concurs in the result.