J-S59005-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| QUENTIN INGRAM, | |
| Appellant | No. 1468 WDA 2014 |

Appeal from the Judgment of Sentence April 2, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0002741-2012

BEFORE:  BOWES, DONOHUE, AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                **FILED NOVEMBER 09, 2015**

Quentin Ingram appeals from the judgment of sentence of 76 to 152 years imprisonment that was imposed after a jury convicted him of third-degree murder, seven counts each of aggravated assault and reckless endangerment, and one count of carrying an unlicensed firearm.  We affirm.

Appellant's convictions arose from a shooting spree committed at a party that was being hosted by Reginald and Ebony Pearson for their daughter's sixteenth birthday.  On the evening of December 18, 2011, Mr. and Mrs. Pearson had the party at their residence on 616 South 5th Street, Duquesne.  Food was served in the first floor dining room, and there was a disc jockey in the basement.  Guests were directed to enter the party through a kitchen door, and an outside door, which led directly to the

---

*  Former Justice specially assigned to the Superior Court.

basement, had been locked.  Mr. and Mrs. Pearson thought the event was invitation-only, but someone posted it on Facebook.

Mr. Pearson was in the basement when he noticed a girl open the door and allow two males, whom Mr. Pearson did not know, to enter the party. Mr. Pearson identified Appellant as one of the two men and stated that he was wearing black jeans, a hooded sweatshirt with gray and black horizontal stripes, and black sneakers.  Appellant's companion was wearing a black T-shirt and a rabbit fur hat with flaps.   Mr. Pearson viewed Appellant and his companion from fifteen feet away in the basement, which was illuminated with a white florescent lights, a red light, and a light over the disc jockey.

Once Appellant arrived, Mr. Pearson went upstairs and, on his way, passed by Appellant and his companion and clearly saw their faces. Mr. Pearson told his wife that uninvited people had arrived at the party.  The Pearsons went to the basement, and Mrs. Pearson announced over a microphone that the party was ending.  Mr. Pearson then saw Appellant, who was standing near the door, reach into his waistband and retrieve a grey semi-automatic Mach 11 gun.  Appellant fired numerous rounds into the crowd while making a sweeping motion around the room.  Mr. Pearson ducked behind a piece of furniture and looked up after the shooting stopped. Appellant killed Drew Bracey and injured seven other people with his gunfire.

Appellant and his friend fled through the basement door.  Mr. Pearson ran after the pair, who entered a blue Buick that already was traveling down

the street.  Mr. Pearson's attempt to follow the car was futile, so Mr. Pearson returned home, where police and ambulances had arrived.

After Mrs. Pearson discovered that her husband had seen the shooter, she contacted police.  On December 20, 2011, Mr. Pearson went to the police station and viewed a photographic array that did not contain Appellant's picture.  Mr. Pearson told police that the perpetrator was not in the display.  After he was shown a second group of pictures, Mr. Pearson immediately identified Appellant as the assailant and initialed the photograph.  Mr. Pearson provided a recorded statement, which was played at trial.  Bridget Walker, Dazhia Clark, and Jahliyah Davis testified that they knew Appellant and that he was present at the party.  Ms. Clark and Ms. Davis reported that Appellant was wearing a striped hoodie.

Brent Jordan was at the party with the homicide victim Drew Bracy.  Brent told the jury that, immediately before the assault started, Drew told Brent that someone was trying to hurt him.  Drew Bracy was struck by seven bullets, and Brent Jordan was struck in the leg by one.  Appellant shot Taylor Thomas, who was unable to identify her assailant but reported that he shot an entire clip of the semi-automatic gun, reloaded it, and began to shoot again.  Ms. Thomas had nine bullets in her body.  Camille Freeman was shot twice.  A bullet grazed the chin of Courtney Robinson.  Appellant shot Dazhia Clark in the chest.  Jahliyah Davis sustained a gunshot wound to leg.  Homicide Detective Patrick Kinavey reported that there was an eighth

shooting victim, William Means, who was shot in the fact but survived. Mr. Means could not be located to appear at the trial.

Detective Richard Dwyer, a member of the Fugitive Squad, testified that a warrant was issued for Appellant on December 20, 2011, and his team immediately began to search for him. On February 7, 2012, Detective Dwyer was informed by an unidentified source that Appellant was located in Versailles in a particular apartment complex. Appellant was arrested the following day.

In this appeal from the judgment of sentence, Appellant purports to raise six distinct contentions:

I. Whether the evidence in this matter was legally insufficient to sustain Appellant's conviction of carrying a firearm without a license.

II. Whether the evidence in this matter was legally insufficient to sustain Appellant's convictions of recklessly endangering another person.

III. Whether the evidence in this matter was legally insufficient to sustain Appellant's convictions of aggravated assault.

IV. Whether the evidence in this matter was legally insufficient to sustain Appellant's convictions of recklessly endangering another person and /or aggravated assault as to alleged victim, Willie Means.

V. Whether the verdict in this matter was against the weight of the evidence.

VI. Whether the trial court erred in improperly instructing the jury regarding Appellant's prior conviction.

Appellant's brief at 8.

In Appellant's first three contentions, he suggests that the evidence is insufficient to sustain his convictions because the only proof supporting those offenses "was the incredulous testimony of Reginald Pearson." Appellant's brief at 24, 30, 34-36. Appellant maintains that Mr. Pearson gave inconsistent descriptions of the shooter and that other witnesses offered testimony that conflicted with that of Mr. Pearson. For example, some witnesses reported that Appellant was located in a different part of the small basement when he began his shooting spree and that Appellant entered the party from the kitchen rather than the basement door. Appellant represents throughout his brief that Mr. Pearson originally identified Clarence Ball as the shooter from one of the photographic arrays shown to him at the police station. However, at trial, Mr. Pearson denied that he told police that Ball was the shooter. N.T. Jury Trial, 01/6-10/14, at 161. Instead, he said that the shooter's picture was not in the first array, and that Appellant's photograph was in the second set of pictures police showed to that witness. *Id*. at 130. Mr. Pearson stated that he had no doubt that Appellant was the shooter. *Id*. at 131. Mr. Pearson testified that he told police that Ball "kind of looked like the shooter, but that wasn't him." *Id*. at 161.

We note that:

In reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable

- 5 -

inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt.

*Commonwealth v. Leatherby*, 116 A.3d 73, 79 (Pa.Super. 2015).

Mr. Pearson's testimony, which pinpointed Appellant as the shooter, establishes that Appellant committed the crimes in question. Additionally, it is well-established that "The finder of fact—here, the jury—exclusively weighs the evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the evidence. *Commonwealth v. Sanchez*, 36 A.3d 24, 39 (Pa. 2011) (citation omitted) *see also Commonwealth v. Page*, 59 A.3d 1118, 1130 (Pa.Super. 2013) ("A determination of credibility lies solely within the province of the factfinder."); *Commonwealth v. Blackham*, 909 A.2d 315, 320 (Pa.Super. 2006) ("The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses. . . . It is not for this Court to overturn the credibility determinations of the fact-finder."). Our Supreme Court has further articulated, on numerous occasions, that: "Issues of witness credibility include questions of inconsistent testimony[.]" *E.g. Sanchez*, *supra* at 39.

The jury herein heard all the evidence, including the testimony of other witnesses and all of the inconsistencies about which Appellant complains on appeal. The jury was free to credit or disbelieve Mr. Pearson, and we have no authority to overturn that determination. Moreover, Mr.

Pearson's testimony was corroborated by other witnesses who knew Appellant, saw Appellant at the party, and stated that he was dressed in the manner described by Mr. Pearson.

We note that Appellant does not, to any extent, suggest in this appeal that the evidence failed to establish any element of any offense for which he was convicted. His first three sufficiency challenges solely are that Mr. Pearson, based upon inconsistencies in his testimony and between his testimony and that of other witnesses, was not credible when he identified Appellant as the perpetrator of the offenses in question. However, the trial court, the Honorable Donald E. Machen, clearly and thoroughly delineated the elements of the offense and analyzed how the evidence was sufficient to prove those elements. Hence, we rely upon his November 10, 2014 opinion in that respect, and we reject Appellant's first three challenges to the sufficiency of the evidence.

Appellant's fourth position is that his convictions for aggravated assault and reckless endangerment as to Mr. Means cannot stand because Mr. Means did not testify. Nevertheless, the Commonwealth established, through the testimony of Homicide Detective Patrick Kinavey, that there was an eighth shooting victim, William Means, whom the detective interviewed and who was subpoenaed for trial. Mr. Means, however, could not be located. The Commonwealth also proved that Mr. Means was treated at the hospital following the shooting, and his medical records were introduced into

evidence. Those records indicated that Mr. Means sustained a gunshot wound to the face. None of the other victims was shot in the face, other than Courtney Robinson, who was grazed in the chin and who testified that she saw someone who was shot in the face. Hence, we conclude that the evidence was sufficient to sustain the jury's finding that there was a victim of the shooting named William Means and that Appellant shot him in the face. We therefore reject this challenge.

Appellant's fifth claim, which was raised in a post-trial motion, is that the verdict was against the weight of the evidence. An allegation that a guilty verdict is against the weight of the evidence is:

> addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [jury] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Tejada*, 107 A.3d 788, 795-96 (Pa.Super. 2015) (citation omitted). Additionally, "One of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence and that new

process was or was not dictated by the interests of justice." *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citation omitted).

Appellant's position that his convictions are against the weight of the evidence is a repetition of his first three challenges to Mr. Pearson's credibility. He again points to supposed inconsistencies and contradictions in the evidence proffered by Mr. Pearson and between Mr. Pearson's testimony and the testimony of other witnesses. The trial court heard the trial evidence and viewed Mr. Pearson as he testified. It was in the best position to assess whether the jury properly credited that witness. Hence, we can perceive of no abuse of discretion in the trial court's decision to reject Appellant's weight-of-the-evidence claim.

Appellant's final allegation is that the trial court gave an instruction that was not supported by the evidence. Specifically, the jury was told:

> You have heard evidence tending to prove that the defendant was guilty of an offense or improper conduct for which he is not on trial. This evidence is before you for a limited purpose. That is, for the purpose of tending to prove the circumstances surrounding the shooting of the victim. This evidence must not be considered by you in any light other than the purpose I just stated. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

N.T. Jury Trial, 1/9-10/14, at 605.

Appellant objected to the charge because there had been no evidence presented that Appellant, since he had not testified, was guilty of another

- 9 -

offense or improper conduct for which he was not being tried. He, however, did not request a curative instruction that the statement was inapplicable in this matter. The trial court also reprimanded Appellant because he had been provided a copy in advance of all the jury instructions and directed to raise any objections before they were read.

Our standard of review regarding Appellant's contention is as follows:

When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury.

*Commonwealth v. Miskovitch*, 64 A.3d 672, 684, (Pa.Super. 2013).

Herein, we conclude that the dissemination of the charge was entirely innocuous and could not have harmed Appellant in any way. Not only did he not commit a prior bad act, the instruction clearly told the jury that such an act could not be viewed as evidence of guilt. There was nothing erroneous in the charge itself since evidence of a prior bad act may, in fact, not be used to infer guilt. Thus, we conclude that the charge did not mislead or confuse the jury and that a new trial is not warranted due to the trial court's inclusion of an inapplicable statement in its instructions. *See id*. (where jury was given a correct but unnecessary instruction, we concluded that, since there was no proof "that the superfluous instruction altered or unduly

- 10 -

influenced the judgment of the jury," dissemination of the information was harmless error).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/9/2015

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA     CRIMINAL DIVISION

v.                                CC: 201202741

QUENTIN INGRAM

### Opinion

Defendant was charged at CC201202741 with one (1) count of Criminal

Homicide, 18 Pa.C.S.§2501(a); seven (7) counts of Aggravated Assault, 18

Pa.C.S.§2702(a)(1); one (1) count of Carrying a Firearm Without a License, 18

Pa.C.S. §6106; and, seven (7) counts of Recklessly Endangering Another

Person, 18 Pa.C.S. §2705 from an incident arising on December 18, 2011. A

jury trial was held on January 6-10, 2014, after which the jury found the

defendant not guilty of First Degree Murder, guilty of Third Degree Murder and

guilty of all remaining counts. After a pre-sentence investigation, defendant was

sentenced on the count of Third Degree Murder to 20-40 years incarceration; and

8-16 years incarceration for each count of Aggravated Assault running

consecutively. Timely Post Sentence Motions were filed, amended and then a

hearing was held on the Amended Post Sentence Motions on June 24, 2014, at

which time the Motions were denied. This timely appeal followed.

In his Statement of Errors Complained of on Appeal, defendant raises 6

1

Issues.

ISSUE 1:

The first error complained of is that "[T]he jury's guilty verdict in this matter was against the weight of the evidence. Defendant specifies 8 examples of this claim, including 11 specific allegations of the "incredulous testimony offered by Commonwealth witness, and only witness allegedly identifying Appellant the perpetrator, Reggie Pearson."

The Superior Court has steadfastly held that the "standard of review of a weight of the evidence claim is as follows:

> Our standard of review for a challenge to the weight of the evidence is well-settled: The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses. *See Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004). As an appellate court, we cannot substitute our judgment for that of the finder of fact. *See id.* Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. *See Commonwealth v. Passmore*, 857 A.2d 697, 708 (Pa.Super.2004), *appeal denied*, 582 Pa. 673, 868 A.2d 1199 (2005). Our appellate courts have repeatedly emphasized that "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence." *Commonwealth v. Forbes*, 867 A.2d 1268, 1273 (Pa.Super.2005) (internal quotes omitted).
> **Com. v. Rabold**, 920 A.2d 857, 860 (Pa. Super. Ct. 2007)

The jury was free to believe all, part or none of the evidence against defendant outlined above. ... It was exclusively within the jury's province to weigh these matters. That the jury convicted defendant is not so contrary to the evidence as to shock one's sense of justice. **Com. v. Champney**, 832 A.2d 403,

2

408-09 (Pa. 2003). In this matter, the defendant claims that Mr. Pearson's testimony was "incredulous" but apparently the jury believed all or part of it. Contrary to defendant's assertion, the guilty verdict was not against the weight of the evidence presented including Mr. Pearson's testimony.

ISSUE 2:

The evidence presented on this matter was insufficient to sustain defendant's Conviction of Carrying A Firearm Without a License as defendant claims that "the evidence was insufficient to prove that Appellant was even one (1) of the individuals carrying a firearm".

The statute reads as follows:

**18 Pa.C.S.A. § 6106. Firearms not to be carried without a license**

> **(a) Offense defined.--**
> (1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.
> (2) A person who is otherwise eligible to possess a[1] valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.
>
> **18 Pa.C.S.A. § 6106**

Witness Reginald Pearson credibly testified multiple times that he saw the defendant with a gun. (Jury Trial Transcript, hereinafter "J.T.", pp. 112-117). Witness Thomas also credibly testified that she saw a "man", "in their twenties", a couple of inches shorter than her 5'11" height "pull the gun out of their pocket". (J.T. pp. 263-264). Regardless, "[t]he Commonwealth may sustain its burden by means of wholly circumstantial evidence" and "the fact that the evidence

3

establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence, coupled with the reasonable inferences drawn therefrom, overcomes the presumption of innocence." **Commonwealth v. Stays**, 40 A.3d 160, 167 (Pa.Super. 2012). Additionally, the parties stipulated at trial that defendant "was not licensed to carry a firearm concealed on about his person." (J.T., p. 510).

As such, defendant's sufficiency of the evidence claim is meritless.

ISSUE 3:

Next, defendant claims that the evidence was insufficient to sustain the conviction of Recklessly Endangering Another Person and that the evidence was "insufficient to prove that the Appellant acted recklessly, thus placing another person, or persons, in danger of death or serious bodily injury".

The statute reads, in pertinent part: Recklessly endangering another person: -- A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury. **18 Pa. Cons. Stat. Ann. §2705**

Witness Bridget Walker credibly testified that she saw defendant at the party. (J.T., pp. 219-221). Witness Dahzia Clark credibly testified that she saw the defendant at the party. (J.T., p. 326). Also, credibly testifying that defendant was at the party was Witness Jahliyah Davis. (J.T., p.353). Along with this credible testimony that the defendant was at the party, the jury heard credible testimony that the defendant (or someone described with characteristics similar to the defendant) was seen with the weapon and firing the weapon. All that is

4

needed is the jury to have believed that the defendant fired the weapon in that basement. "[R]eckless conduct is established by the act of pointing a weapon in the victim's direction and the element of placing the victim in danger of death or serious bodily injury is amply demonstrated by the fact that the victim, indeed, lost her life as a result of the conduct engaged in." **Com. v. Tipton**, 578 A.2d 964, 966 (Pa. Super. 1990). Similarly, in the instant case, the death of Drew Bracey and the serious injury to other victims amply demonstrated the danger.

ISSUE 4:

Defendant claims that the evidence in this matter was insufficient to sustain Appellant's convictions of Aggravated Assault, specifically that defendant "engaged in conduct that constituted a substantial step toward causing serious bodily injury to the victim(s)" and "the evidence was insufficient to prove that it was the Appellant's conscious object of purpose to cause serious bodily injury".

In pertinent part, §2702. Aggravated assault

(a) Offense defined.--A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

. . .

(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon;

2702 (West18 Pa. Cons. Stat. Ann. §)

The intent to commit aggravated assault is established when the accused intentionally acts in a manner which constitutes a substantial or significant step toward perpetrating serious bodily injury upon another. **Com. v. Lopez**, 654

5

A.2d 1150, 1154 (Pa. Super. 1995). The Superior Court has found the requisite intent to commit aggravated assault when the accused has fired a gun into a building he knew was occupied. **Commonwealth v. Eaddy,** 614 A.2d 1203 (Pa. Super. 1992) and has held that discharging a weapon into a structure in which people live is enough to demonstrate the intent to commit aggravated assault. **Commonwealth v. Hunter,** 644 A.2d 763, 764 (Pa. Super. 1994). Similarly, when a person discharges a firearm in a basement that has (by all accounts) more than 10 people in it, the possibility exists that a person in the basement could be harmed and an attempt to cause serious bodily harm to such a person can be inferred. See **Com. v. Rosado,** 684 A.2d 605, 609-10 (Pa Super. 1996).

ISSUE 5:

Defendant claims that the evidence presented was insufficient to sustain convictions as to the charges of Recklessly Endangering Another Person and/or Aggravated Assault as to victim, William Means, was the certified medical records (Exhibits 110 and 111) which failed to identify the identity of the perpetrator who inflicted injuries on the night in question.

As previously stated, the jury, as the finder of fact, is free to believe all, none or parts of the testimony. Here there was evidence presented in the way of medical records that William Means suffered injuries in the way of gunshot wounds at the same location that the other victims suffered injuries. The jury is free to have made the connection that his injuries were a result of the same actions that caused the other victim's injuries and, as such, is free to determine that the injuries to Mr. Means were the result of actions of the defendant. The

6

medical records substantiate the extent of the injuries and the testimony of the victim himself is not necessary.

ISSUE 6:

The trial court improperly instructed the jury regarding defendant's prior convictions. There was no evidence presented at trial of any prior convictions (TT 605 and 629-630). To the contrary, the court instructed the jury as follows:

> You have heard evidence tending to prove that the defendant was guilty of an offense or improper conduct for which he is not on trial. This evidence is before you for a limited purpose. That is, for the purpose of tending to prove the circumstance surrounding the shooting of the victim. This evidence must not be considered by you in any light other than the purpose I just stated. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.
> J.T., p. 605

Both the Commonwealth and defense counsel submitted the jury instructions before the trial court instructed the jury and was advised that the Judge would read them as submitted if agreed to by both. (See J.T., p. 629). Additionally, there was nothing improper about the instruction that was given.

Based on the foregoing, this appeal is without merit.

November 10, 2014

7