J-S72037-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| RICHARD B. SANDT, | : | |
| Appellant. | : | No. 1097 MDA 2018 |

Appeal from the Judgment of Sentence Entered, December 27, 2017,
in the Court of Common Pleas of Lebanon County,
Criminal Division at No(s):  CP-38-CR-0000859-2017.

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED FEBRUARY 26, 2019**

Richard Sandt appeals from the judgment of sentence imposed after a jury convicted him of endangering the welfare of a child.[1]  After careful review, we affirm.

This case arises from an incident that occurred on December 31, 2016, at 304 West Oak Street.  At that time, Sandt, his wife, Lorraine, and her two adult daughters, Jessica and Amanda Stubbs, along with Jessica's four-year-old son, J.M., were living at this address.  The home was owned by Sandt, and the living situation with Jessica, Amanda, and J.M. was meant to be temporary.  Prior to the incident at issue, Sandt had told Jessica that she needed to look for other living arrangements.

_____

[1] 18 Pa.C.S.A. § 4304(a)(1).

On the day of the incident, Amanda was babysitting her nephew J.M., while his mother, Jessica, and his grandmother were working. Amanda was watching J.M., in her bedroom when Sandt abruptly entered the room. According to Amanda, Sandt began screaming at J.M., grabbed his upper arms and started shaking him. Amanda testified that the back of J.M.'s head hit the wall while Sandt continued to shake him. After this, Amanda physically stepped between Sandt and J.M. in an effort to stop Sandt. Sandt continued screaming at J.M., for several more minutes before storming out of the room. Once Sandt left, Amanda checked over J.M., for any injuries. She testified J.M., had blood in his mouth from biting his tongue when his head hit the wall. *See* Trial Court Opinion, 6/4/18, at 1-4.

Amanda and Jessica reported the incident to the police later that day. The police contacted child welfare services, and on May 24, 2017, they charged Sandt with endangering the welfare of children (EWOC), simple assault and harassment.

On November 3, 2017, a jury trial commenced. At the close of the Commonwealth's case-in-chief, Sandt moved for judgment of acquittal. The trial court denied his motion, on the EWOC charge, electing to let the charge go to the jury. The court granted Sandt's motion on the count of simple assault; the attempt portion of that charge was held over for decisions by the jury. Sandt then testified in his own defense. The jury ultimately found Sandt guilty of one count of EWOC, and not guilty on one count of attempted simple assault. The trial court found Sandt guilty of a summary offense of

harassment. On December 27, 2017, the trial court ordered Sandt to pay fines and restitution and ordered him to serve a 23 month probationary term.

On January 4, 2018, Sandt filed a post-sentence motion renewing his earlier motion for judgment of acquittal, asserting that the Commonwealth produced insufficient evidence to sustain a conviction for EWOC. The trial court entered an order and opinion denying Sandt's motion on June 4, 2018. This timely appeal follows. Both Sandt and the trial court have complied with Pa.R.A.P. 1925.

Sandt raises one issue on appeal:

1. Did the trial court err in failing to grant Sandt's post trial motion asserting that there was insufficient evidence to sustain a conviction for endangering the welfare of a child since there was no evidence that Sandt was a "parent, guardian or other person supervising the welfare of a child," and the Commonwealth's own witnesses testified that Sandt did not supervise the child's welfare, never babysat the child, and that it was not Sandt's job to watch the child?

*See* Sandt's Brief at 4.

Whether the evidence was sufficient to support the conviction presents a matter of law; our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Smyser***, 195 A.3d 912, 915 (Pa. Super. 2018) (citation omitted). In conducting our inquiry, we "examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a

reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence." *Id*. (quoting ***Commonwealth v. Doughty***, 126 A.3d 951, 958 (Pa. 2015)). Furthermore, this Court must consider "the entire trial record and all evidence actually received in the aggregate and ***not as fragments*** isolated from the totality of the evidence. ***Commonweath v. Rasado***, 684 A.2d 605, 607-8 (Pa. Super. 1996) (emphasis added) (citing ***Commonwealth v. Harper***, 403 A.2d 536, 538 (Pa. 1979)).

In this appeal, Sandt claims that he properly renewed the motion for judgment of acquittal he presented at the close of the Commonwealth's case when he filed his post-trial motions. As such, he asks this Court to review the evidence of record, not in totality, but only the evidence submitted in the Commonwealth's case in chief. Sandt's Brief at 22. He claims "the consideration of this matter must be limited to the evidence before the [trial] court at the time the motion [for acquittal] was first presented." Sandt's Brief at 22. He cites no authority to support such a limited scope of review.

Further, he claims in order to convict Sandt of EWOC, there would had to have been "evidence in the Commonwealth's case in chief that he provided care, education, training or control of J.M." *Id.* at 24. Instead, he claims, both of the Commonwealth's witnesses testified to facts showing Sandt did not supervise the child's welfare. *Id.*

We reject Sandt's suggestion that we limit our review to only the evidence submitted in the Commonwealth's case in chief. Our precedent dictates that in an appeal challenging the sufficiency of the evidence, we must

- 4 -

examine the entire record.[2]  Indeed, Sandt acknowledges in his brief that our scope of review is plenary.  Sandt's Brief at 3.

With this standard and scope of review in mind, we turn to the relevant statute.  The Pennsylvania Crimes Code defines Endangering the Welfare of Children as follows:

**§ 4304 Endangering the Welfare of Children:**

    (a)    Offense defined

        (1)    A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of a child by violating a duty of care, protection or support.

        (2)    A person commits an offense if the person, in an official capacity, prevents or interferes with the making of a report of suspected child abuse under 23 Pa.C.S. Ch. 63 (relating to child protective services).

        (3)    As used in this subsection, the term "person supervising the welfare of a child" means a person other than a parent or guardian that provides care, education, training or control of a child.

18 Pa.C.S.A. § 4304(a).

When reviewing 18 Pa.C.S.A. § 4304, "we must remember that the statute attempts to prohibit a broad range of conduct in order to safeguard

---

[2] We observe that after the trial court denied Sandt's motion for judgment of acquittal at the close of the Commonwealth's case in chief, Sandt made a strategic choice to take the stand and testify.  He was not required to do so, and he did so at his own risk.  His testimony, whether a benefit or a detriment to his case, became part of the "entire record" subject to our plenary review.

the welfare and security of our children. The common sense of the community should be considered when interpreting the language of the statute." **Commonwealth v. Brown**, 721 A.2d 1105, 1106–07 (Pa. Super. 1998) (citations and internal quotations omitted). Nevertheless, we have held there is insufficient evidence to sustain a conviction for child endangerment where the Commonwealth fails to prove any statutory element. **Commonwealth v. Halye**, 719 A.2d 763 (Pa. Super. 1998).

Here, Standt argues that the Commonwealth failed to prove that he fell within the class of individuals to whom the EWOC statute applies, and that he cannot be guilty of this crime as a matter of law. Regarding Sandt's relationship to J.M., no testimony established that Sandt was J.M.'s parent or guardian. Sandt's Brief at 14. Therefore, Sandt contends that the Commonwealth was required to demonstrate that he was an "other person supervising the welfare of a child." Sandt's Brief at 14. To establish this, Sandt argues that the Commonwealth had to present evidence that he provided care, education, training or control of J.M. **Id**. Sandt believes the Commonwealth failed to meet their burden because its only witnesses, Amanda and Jessica Stubbs, both conceded that Sandt was not responsible for babysitting J.M. the day of the incident, nor did he babysit J.M. at any other time. **Id**. at 15.

The Commonwealth responds that:

> [Sandt's] actions suggest that he believed he had some control over J.M. After all when [Sandt] burst into the bedroom, he went straight for J.M. He directed his

scolding/yelling at J.M. He told J.M. that he was a bad child and needs to learn to listen. These statements imply that he has previously been involved in disciplining J.M. Furthermore, [Sandt] never turned to Amanda to discuss with her the need to supervise J.M. more appropriately. Again this behavior suggests that in the past he has been involved in caring for this child.

Commonwealth's Brief at 8-9.

When we review the entire record and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth as the verdict winner, our crucial inquiry in this case is whether the Commonwealth demonstrated that Sandt was in some way responsible for supervising J.M.'s welfare.

We note that whether an appellant supervised the welfare of a child turns on the particular facts, and is made on a case-by-case basis. *Brown*, 721 A.2d at 1105, n.6. Merely showing that the person lives in the same home as the child, as a single fact, is insufficient proof that the person provides care, education, training or control of the child. *Id*. The Commonwealth must present "evidence that the adult was involved with the child" to prove the requisite supervision for EWOC liability. *Id*. "By showing that the adult played with the child, bathed the child, ate with the child, babysat the child, or otherwise interacted with the child, the prosecution can prove that the adult was supervising the child during the time he resided with the child." *Id*.

This Court has found on multiple occasions that adults residing in the same household as the victim-child, without any biological relation, were liable under EWOC. As we stated in *Brown*, "In an age when nontraditional living

arrangements are commonplace, it is hard to imagine that the commonsense of the community would serve to eliminate adult persons residing with a noncustodial child from the scope of a statute protecting the physical and moral welfare of children." **Brown**, 721 A.2d at 1107.

In such cases, the adult convicted under EWOC either assumed a parental-figure role, and/or the Commonwealth presented evidence that the adult somehow was involved or interacted with the child. **See, e.g.,** **Commonwealth v. Trippett**, 932 A.2d 188 (Pa. Super. 2007) (finding the appellant took care of the child while no one else was home and that the sexual abuse occurred while appellant was alone with the child); **Commonwealth v. Leatherby**, 116 A.3d 73 (Pa. Super. 2015) (finding that appellant was in a relationship with child's mother for two years, resided with the mother and child-victim for six months, had another child with mother, and the child-victim called the appellant "dad"); **Commonwealth v. Brown**, 721 A.2d 1105 (Pa. Super. 1998) (concluding that the appellant periodically babysat the child-victim, changed the victim's diapers, and played with the victim); **Commonwealth v. Golphin**, 161 A.3d 1009 (Pa. Super 2017) (finding that the appellant had a another child with victim's mother, periodically picked victim up from daycare, and the victim referred to appellant as "Daddy").

The trial court in this matter, concluded that the evidence was sufficient to support Sandt's conviction for EWOC. The court reasoned as follows:

Here, the Jury was presented with evidence that [Sandt] and J.M., who he referred to as his grandson, resided in the same home. Based upon the length of [Sandt's] relationship with J.M.'s grandmother, which began prior to J.M.'s birth, it is fair to conclude that [] J.M. and [Sandt] had daily contact in the nature of grandfather and grandson. However, [Sandt] was never tasked with babysitting J.M., and on the day in question J.M.'s aunt, Amanda Stubbs, was babysitting J.M. By [Sandt's] own admission he did not ask Amanda Stubbs to correct what he perceived to be J.M.'s misbehavior, but personally interjected himself into the role of providing direct, physical discipline by grabbing J.M. to turn him towards him. [Sandt] also stated that Amanda Stubbs "wasn't going to do anything about it, so I went to the end of the bed…" This is when Amanda Stubbs testified that [Sandt], "Continued to scream at [J.M.] and reached out and grabbed [him] by his upper arms and proceeded to shake [him]. When J.M.'s head actually hit the back [of] the wall because J.M. had sat back up against the wall." The Commonwealth suggests that [Sandt's] immediate resort to discipline without addressing concerns for supervision with Amanda Stubbs first suggests that in the past he has been involved in care for J.M.

\*\*\*

That which is supervised is the child's welfare. By requiring supervision of the child's welfare rather than of the child, the statute endeavors to safe-guard the emotional, psychological, and physical well-being of children. [Sandt] by his actions emotionally, psychologically, and physically altered J.M.'s well-being as witnesses testified that J.M. looked like a "deer in headlights" after the encounter, and that Amanda Stubbs had to calm J.M. down because he was "getting really upset, started crying." Further, that there was testimony that J.M. was physically hurt as there was blood in his mouth from [presumably] biting his tongue when his head hit the wall. As previously mentioned above there was no request by [Sandt] to Amanda Stubbs to correct J.M.'s behavior. Instead, [Sandt] interjected himself into the situation, and upon belief that Amanda Stubbs "wasn't going to do anything about it" began to exercise control of J.M. to provide behavioral correction which may also be interpreted to constitute education and/or training.

Trial Court Opinion, 6/4/18, at 14-16 (citations omitted).

The trial court considered the entire record, including Sandt's own testimony in reaching its conclusion. Having reviewed the evidence and all reasonable inferences derived therefrom in favor of the Commonwealth as the verdict winner, we agree with the trial court's conclusion. Given the nature of Sandt's relationship with J.M. (referring to him as his grandson, and being in a relationship with his grandmother since before his birth) and the way he conducted himself on the date in question (directly disciplining the child who was living in his house), we conclude that there was sufficient evidence to support the jury's finding, beyond a reasonable doubt, that Sandt fell within a class of persons responsible for J.M.'s welfare under EWOC. As such, we affirm Sandt's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/26/2019