J-A04023-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER BAJ, | : | |
| | : | |
| Appellant | : | No. 1186 EDA 2019 |

Appeal from the Judgment of Sentence Entered December 19, 2018
in the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0000834-2018

BEFORE:   PANELLA, P.J., STRASSBURGER, J.[*] and COLINS, J.[*]

MEMORANDUM BY STRASSBURGER, J.:                **FILED MAY 4, 2020**

Christopher Baj (Appellant) appeals from the judgment of sentence imposed following his convictions for aggravated assault, simple assault, recklessly endangering another person (REAP), and endangering the welfare of children (EWOC).  We affirm.

The trial court provided the following background.

The events unfolded in the early evening on January 29, 2018, after [Appellant] was served divorce papers by his wife, Mia [], at their residence at 2272 Toursdale Drive in Bethlehem Township, Northampton County, Pennsylvania.  Apparently, [Appellant] did not anticipate the divorce filing.

According to the testimony, in the early evening hours, [Appellant] and [Mia] calmly discussed the divorce until around midnight, when she went to bed.  [Appellant] remained awake at

_____

[*] Retired Senior Judge assigned to the Superior Court.

this time and went into his home office. While in his office[, Appellant] completed an online transfer of approximately $75,000 from a marital account into an account that he shared with his adult daughter, Natalie ([Mia's stepdaughter]). He also consumed a bottle of vodka and sent a cryptic email to both of his adult daughters from his previous marriage. In the email, [Appellant] expressed that he had no desire to proceed with the divorce.

On January 30, 2018, at approximately 2:30 a.m.[, Mia] awoke because she heard [Appellant] coming up the stairs. [Mia] got out of bed. [Appellant] approached [Mia] with the divorce papers in his left hand. At that time[, Mia] became alarmed because she observed a firearm in the waistband of [Appellant's] gym shorts. [Mia] alleged that she attempted to grab the firearm. [Appellant] swatted away [Mia's] hand, removed the gun from his shorts and raised the gun to her head. [Mia] ran into the master bathroom and locked [the] door. She then dialed 911. [Appellant] tried to open the locked door and then proceeded to shoot his gun three times through the bathroom door, at varying heights, twice near the locking mechanism and once near the door frame, at head height. [Appellant] then attempted to break the door open, at that time [Mia] was able to run out of the bathroom, down the stairs, and outside the home, all the while she remained on the phone with the 911 operator. [Mia] recounted that as she ran down the stairs she saw her son, J.B.[,] come to the doorway of his room and say, "Daddy?" and she heard [Appellant] instruct J.B. to get back in his room.

The Commonwealth played the 911 call for the jury, in which [Mia] could be heard desperately crying for help, screaming to her husband on the other side of the door that she was calling the police and begging for the operator to send the police because she was fearful that [Appellant] was going to kill her. After which, three gun shots can be heard. The jury heard the three shots taken by [Appellant] into the door that [Mia] was cowering behind, after she cried out in fear, and asked for help.

The police responded to the scene, along with a SWAT team and a hostage negotiator. For several hours, [Appellant] refused to respond to police phone calls and loudspeaker instructions. The hostage negotiator was unable to defuse the situation or to safely get the two minor children out of the

residence. Eventually, the police were able to monitor the children and then contact the children by accessing the speaker for the parent's monitor/surveillance system stationed in the children's bedroom. After the boys woke up around 6:30 a.m., the older son, J.B., who was 7 years old at the time, was instructed by officers to get his 4-year-old brother and leave through the front door of the home. The boys were able to leave the residence on their own accord; however, [Appellant] did not assist in the safe exit of the two boys and refused to comply with all police directives. Apparently, after pacing in the home for hours, [Appellant] sat catatonically on a living room chair for several hours.

After repeated attempts to ask [Appellant] to leave the home by his own volition, around 12:00 p.m. the police performed a "brake and rake" where they broke a window in [Appellant's] home to distract him, and the SWAT team entered the home and took [Appellant] into custody without injury. The police then obtained a search warrant. The police located and seized a Taurus revolver that was used in the shooting, as well as the bullet fragments in the bathroom and casings in the bedroom. The revolver was found in a cabinet above the refrigerator.

Trial Court Opinion, 5/15/2019, at 2-5 (citations omitted). Upon further investigation, police located a storage locker which contained several firearms and a bottle of vodka, and discovered Appellant made a $75,000 transfer of funds held in a trust with Mia to Appellant's other adult daughter, Kristina. Both the rental and the transfer occurred two days before the shooting. Additionally, Appellant, Mia, and their two children, were scheduled to travel to Poland on the morning of January 30, 2018. On January 29, 2018, Appellant cancelled their car service to the airport, and later in the day, rescheduled via a blocked phone number transportation for one.

As a result of this incident, Appellant was arrested and charged with the aforementioned crimes, as well as attempted murder. Appellant proceeded to a jury trial, where the aforementioned facts were developed. At the conclusion of the trial, the jury convicted Appellant of one count each of aggravated assault, simple assault, and REAP, and two counts of EWOC, but the jury was hung as to the attempted murder charge and a mistrial was declared as to that charge.

On December 19, 2018, the trial court sentenced Appellant to an aggregate term of 6 to 17 years of incarceration. For sentencing purposes, the trial court merged Appellant's convictions for simple assault and aggravated assault. Appellant timely filed a post-sentence motion challenging the sufficiency of the evidence to sustain his convictions for aggravated assault and simple assault. The trial court denied the motion on March 25, 2019.

This timely-filed appeal followed.[1] On appeal, Appellant challenges the sufficiency of the evidence to sustain his convictions for aggravated assault and simple assault. Appellant's Brief at 4.

To address a challenge to the sufficiency of the evidence, we must determine

_____

[1] Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

whether, viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

**Commonwealth v. Gonzalez**, 109 A.3d 711, 716 (Pa. Super. 2015) (citation omitted).

In the instant case, Mia did not suffer physical injury as a result of Appellant's shooting. Therefore, the Commonwealth proceeded on aggravated assault and simple assault charges on the basis of attempt. To prove that Appellant committed aggravated assault, the Commonwealth had to establish that Appellant "attempt[ed] to cause serious bodily injury to another, [] under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S § 2702(a)(1). As applied to the offense of aggravated assault, "serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. "Where the victim does not sustain serious bodily injury, the Commonwealth must prove that the [defendant]

- 5 -

acted with specific intent to cause serious bodily injury." **Commonwealth v. Lewis**, 911 A.2d 558, 564 (Pa. Super 2006).

In order to prove that Appellant committed simple assault, the Commonwealth had to prove that Appellant attempted to cause bodily injury to another. 18 Pa.C.S. § 2701(a)(1). "Bodily injury" is "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301.

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). "Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." **Commonwealth v. Miller**, 172 A.3d 632, 641 (Pa. Super. 2017). In determining whether the Commonwealth proved Appellant had the requisite specific intent, the fact-finder is free to conclude "the accused intended the natural and probable consequences of his actions to result therefrom." **Commonwealth v. Rosado**, 684 A.2d 605, 608 (Pa. Super. 1996).

The crux of Appellant's argument is that the evidence was insufficient to sustain his convictions because the Commonwealth failed to prove that Appellant acted with the requisite specific intent. Appellant's Brief at 11-15. Specifically, Appellant claims "he fired each shot for the purpose of opening the door and not with the specific intent to hurt [Mia]." **Id.** at 11. To support his contention, Appellant essentially argues that if it was his

intention to cause his wife serious bodily injury, he would have done so after he finally broke the door open. *Id.* Lastly, Appellant contends his conviction on the charge of aggravated assault was inconsistent with the jury's hung verdict as to attempted murder. *Id.* at 14.

As stated *supra*, the intent to commit aggravated assault is established when the accused intentionally acts in a manner that constitutes a substantial or significant step toward perpetrating serious bodily injury upon another. ***Rosado***, 684 A.2d at 608. This Court has found the requisite intent to commit aggravated assault when the accused has fired a gun into a building he knew was occupied. *Id.* at 609-10.

Reviewing the evidence in the light most favorable to the Commonwealth, we conclude the evidence was sufficient to enable the jury to find Appellant guilty of aggravated assault. Specifically, the jury was permitted to find the evidence established Appellant intended to cause serious bodily injury when he fired his weapon at the bathroom door, at varying heights, behind which he knew Mia was hiding. ***See Rosado***, 684 A.2d at 609-10. The foregoing, together with the events in the preceding days that culminated in Appellant's being served divorce and custody papers, in context, allow one to infer that Appellant intended to cause serious bodily injury to Mia. Accordingly, we conclude the evidence is sufficient to establish that Appellant acted with the requisite intent, and therefore, sustain Appellant's conviction of aggravated assault.

Because we have determined that the evidence was sufficient to sustain Appellant's conviction of aggravated assault, and simple assault is a lesser included offense of aggravated assault, we also conclude the evidence is sufficient to sustain Appellant's conviction of simple assault. *See Commonwealth v. Sirianni*, 428 A.2d 629, 632-33 (Pa. Super. 1981) (explaining that simple assault as an attempt to cause bodily injury is a lesser included offense of aggravated assault, which is an attempt to cause serious bodily injury).[2]

_____

[2] In Appellant's Brief, he alludes to an argument that the verdict was inconsistent. "[I]t is hard to reconcile how a jury could have found that Appellant had the conscious object to seriously harm but not to kill." Appellant's Brief at 14.

Such an argument fails on numerous grounds. First, it is waived. If Appellant is claiming attempted murder and aggravated assault have identical elements of intent, and therefore the failure to convict Appellant on the attempted murder charge should have also resulted in a failure to convict on the aggravated assault charge, Appellant never raised this in his 1925(b) Statement.

> [T]he United States Supreme Court has recognized that a court's review of the evidentiary sufficiency of a particular conviction is separate from its review of inconsistent verdicts, as sufficiency review entails an assessment of whether the evidence was sufficient for the jury to convict a defendant of a particular offense and is "independent of the jury's determination that evidence on another count was insufficient." *United States v. Powell*, 469 U.S. 57, 67, [ ] (1984). Thus, the Supreme Court has explicitly cautioned that sufficiency review "should not be confused with the problems caused by inconsistent verdicts." *Id.* Accordingly, in line with the [H]igh Court, we emphasize that such challenges are more appropriately characterized as challenges to the inconsistency of the jury's verdict, rather than

*(Footnote Continued Next Page)*

Based on the foregoing, we affirm Appellant's judgment of sentence.

_(Footnote Continued)_ ————————————

> to the sufficiency of the evidence to sustain a particular conviction.

***Commonwealth v. Moore***, 103 A.3d 1240, 1242 n.3 (Pa. 2014).

Second, the trial judge in his opinion explained that the jury verdict was not inconsistent. Trial Court Opinion, 5/15/2019, at 8-12. Third, a jury verdict is not required to be consistent.

> "Inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. ***Commonwealth v. Petteway***, 847 A.2d 713, 718 (Pa. Super. 2004) (citations omitted). Rather, "[t]he rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on what counts to convict in order to provide a defendant with sufficient punishment." ***Commonwealth v. Miller***, 657 A.2d 946, 948 (Pa. Super. 1995) (citations omitted). "When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity. Thus, this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict. ***Petteway***, 847 A.2d at 718.

***Commonwealth v. Frisbie***, 889 A.2d 1271, 1273 (Pa. Super. 2005) (citations modified); ***see also Commonwealth v. Miller***, 35 A.3d 1206, 1208, 1213 (Pa. 2012) ("inconsistent verdicts ... are allowed to stand so long as the evidence is sufficient to support the conviction"; "an acquittal cannot be interpreted as a specific finding in relation to some of the evidence, and that even where two verdicts are logically inconsistent, such inconsistency alone cannot be grounds for a new trial or for reversal"; "the 'special weight' afforded the fact of an acquittal plays no role in the analysis of inconsistent verdicts, because, by definition, one of the verdicts will always be an acquittal").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>5/04/2020</u>