J-S61004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BARRY ROSS, | |
| Appellant | No. 528 EDA 2018 |

Appeal from the Judgment of Sentence Entered May 17, 2016
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0004833-2015

BEFORE:  BENDER, P.J.E., BOWES, J., and PANELLA, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED NOVEMBER 06, 2018**

Appellant, Barry Ross, appeals from the judgment of sentence of 21½ to 47 years' incarceration, imposed after he was convicted, following a non-jury trial, of various sexual offenses, including rape of a child.  On appeal, Appellant seeks to challenge the sufficiency of the evidence to sustain his convictions, as well as the discretionary aspects of his sentence.  Additionally, Appellant's counsel, Stuart Wilder, Esq., seeks to withdraw his representation of Appellant pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  After careful review, we agree with counsel that Appellant's two issues are frivolous.  Nevertheless, we deny counsel's petition to withdraw, as we must *sua sponte* reverse Appellant's designation as a Sexually Violent Predator (SVP) under the Sexual

Offender Registration and Notification Act (SORNA), 42 Pa.C.S. § 9799.10-9799.41, and remand for further proceedings.

The trial court set forth a detailed summary of the facts and procedural history of Appellant's case. *See* Trial Court Opinion (TCO), 4/25/18, at 1-11. Based on the facts discussed by the trial court, Appellant was convicted, following a non-jury trial, of single counts of rape of a child and aggravated indecent assault of a child, as well as two counts each of indecent assault of a person less than 13 years of age, corruption of a minor, and endangering the welfare of a child. Appellant's convictions stemmed from his sexually abusing his two biological daughters over the course of several years. For these offenses, the court imposed the aggregate sentence stated *supra*. The court also determined that Appellant met the criteria to be deemed an SVP.

Appellant filed a timely post-sentence motion, which the court denied. He then filed a timely notice of appeal. In response to the trial court's order for Appellant to file a Pa.R.A.P. 1925(b) statement, Attorney Wilder filed a Pa.R.A.P. 1925(c)(4) statement of his intent to withdraw on appeal. However, Attorney Wilder set forth in that statement the following two issues that Appellant desired to raise on appeal:

1. The evidence was insufficient to support the verdict because there was no DNA evidence connecting [Appellant] to the crime; and

2. The sentence was manifestly excessive, both because [Appellant] was not on parole or probation at the time the crimes occurred, and because sentences on all counts were not made to run concurrently to one another.[]

Rule 1925(c)(4) Statement, 3/19/18, at 1-2. On April 25, 2018, the trial court issued a Rule 1925(a) opinion addressing the merits of Appellant's two issues.

On July 30, 2018, Attorney Wilder filed with this Court a petition to withdraw as counsel. That same day, counsel also filed an **Anders** brief, discussing Appellant's issues and concluding that they are frivolous, and that Appellant has no other, non-frivolous issues he could pursue herein. Accordingly,

> this Court must first pass upon counsel's petition to withdraw before reviewing the merits of the underlying issues presented by [the appellant]. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*).
>
> Prior to withdrawing as counsel on a direct appeal under **Anders**, counsel must file a brief that meets the requirements established by our Supreme Court in **Santiago**. The brief must:
>
> > (1) provide a summary of the procedural history and facts, with citations to the record;
> >
> > (2) refer to anything in the record that counsel believes arguably supports the appeal;
> >
> > (3) set forth counsel's conclusion that the appeal is frivolous; and
> >
> > (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.
>
> **Santiago**, 978 A.2d at 361. Counsel also must provide a copy of the **Anders** brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the **Anders** brief." **Commonwealth v. Nischan**, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

*Commonwealth v. Orellana*, 86 A.3d 877, 879-80 (Pa. Super. 2014). After determining that counsel has satisfied these technical requirements of *Anders* and *Santiago*, this Court must then "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citations and footnote omitted).

In this case, Attorney Wilder's *Anders* brief complies with the above-stated requirements. Namely, he includes a summary of the relevant factual and procedural history, he refers to portions of the record that could arguably support Appellant's claims, and he sets forth his conclusion that Appellant's appeal is frivolous. He also explains his reasons for reaching that determination, and supports his rationale with citations to the record and pertinent legal authority. Attorney Wilder also attached to his petition to withdraw a letter directed to Appellant, in which he informed Appellant of the rights enumerated in *Nischan* and stated that he enclosed a copy of his *Anders* brief for Appellant's review. Accordingly, counsel has complied with the technical requirements for withdrawal. We will now independently review the record to determine if Appellant's issues are frivolous, and to ascertain if there are any other, non-frivolous issues he could pursue on appeal.

In assessing Appellant's sufficiency claim and challenge to the discretionary aspects of his sentence, we have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have considered the thorough and well-crafted opinion of the Honorable Rea B.

- 4 -

Boylan of the Court of Common Pleas of Bucks County. We conclude that Judge Boylan's extensive, well-reasoned opinion accurately disposes of the issues presented by Appellant.[1] Accordingly, we adopt Judge Boylan's opinion as our own and conclude that Appellant's two issues are frivolous for the reasons set forth therein.

However, we must *sua sponte* reverse Appellant's designation as an SVP under SORNA. In **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017), our Supreme Court held that the registration requirements under SORNA are punitive, thus overturning prior decisions deeming those registration requirements civil in nature. **Id.** at 1218. Subsequently, this Court ruled that,

> since our Supreme Court has held [in **Muniz**] that SORNA registration requirements are punitive or a criminal penalty to which individuals are exposed, then under **Apprendi [v. New Jersey**, 530 U.S. 466 (2000),] and **Alleyne** [**v. United States**, 133 S.Ct. 2151, 2163 (2013) ], a factual finding, such as whether a defendant has a "mental abnormality or personality disorder that makes [him or her] likely to engage in predatory sexually violent offenses[,]" 42 Pa.C.S.[ ] § 9799.12, that increases the length of registration must be found beyond a reasonable doubt by the chosen fact-finder. Section 9799.24(e)(3) identifies the trial court as the finder of fact in all instances and specifies clear and convincing evidence as the burden of proof required to designate a convicted defendant as an SVP. Such a statutory scheme in the criminal context cannot withstand constitutional scrutiny.

---

[1] However, we disagree with Judge Boylan that Appellant waived his sufficiency of the evidence claim by failing to raise it with specificity in his concise statement, where Attorney Wilder filed a Rule 1925(c)(4) statement. **See** TCO at 11-12. In any event, the court provides a detailed alternative analysis, **id.** at 12-15, which we adopt in concluding that Appellant's sufficiency challenge is frivolous.

*Commonwealth v. Butler*, 173 A.3d 1212, 1217–18 (Pa. Super. 2017), *appeal granted*, 190 A.3d 581 (Pa. 2018).[2] Accordingly, the **Butler** panel held that 42 Pa.C.S. § 9799.24(e)(3) is unconstitutional. **Id.** at 1218.[3]

In light of **Butler**, we are compelled to conclude that Appellant's sentence is illegal to the extent he was deemed an SVP under SORNA. **See id.** Accordingly, we reverse that portion of Appellant's judgment of sentence, and remand his case for the trial court to determine what, if any, registration requirements apply to Appellant. In all other respects, we affirm Appellant's judgment of sentence. Given this disposition, we deny Attorney Wilder's petition to withdraw and direct that he represent Appellant on remand.

Judgment of sentence affirmed in part, reversed in part. Case remanded for further proceedings. Petition to withdraw denied. Jurisdiction relinquished.

_____

[2] While the Pennsylvania Supreme Court has granted allowance of appeal in **Butler**, our decision therein remains binding authority until the Supreme Court reaches a decision.

[3] Following **Muniz** and **Butler**, the Pennsylvania General Assembly enacted legislation to amend SORNA. **See** Act of Feb. 21 2018, P.L. 27, No. 10 ("Act 10"). Act 10 amended several provisions of SORNA, and also added several new sections found at 42 Pa.C.S. §§ 9799.42, 9799.51-9799.75. In addition, the Governor of Pennsylvania recently signed new legislation striking the Act 10 amendments and reenacting several SORNA provisions, effective June 12, 2018. **See** Act of June 12, 2018, P.L. 1952, No. 29. These modifications do not apply to Appellant's SVP designation, however, which the trial court imposed in 2016 under the original SORNA.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/18

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : |
| | :     No. CP-09-CR-0004833-2015 |
| v. | : |
| | :     • |
| BARRY ROSS | : |

## OPINION

Defendant Barry Ross ("Appellant") appeals to the Superior Court of Pennsylvania from the judgment of sentence entered on May 17, 2016. On that date, following a non-jury trial, this Court found Appellant guilty of Rape of a Child[1], Aggravated Indecent Assault of a Child[2], two counts of Indecent Assault of a Person less than 13 Years of Age[3], two counts of Corruption of Minors[4], and two counts of Endangering the Welfare of Children.[5] We sentenced Appellant to an aggregate 21 and one-half to 47 years' incarceration. We file this Opinion pursuant to Pa.R.A.P. 1925(a).

## I.    FACTUAL BACKGROUND

This case involves multiple instances of Appellant sexually abusing his two biological daughters, N.R. and S.R, over several years. At the time of trial, N.R. and S.R. were thirteen- and eight-years-old, respectively.

Appellant began to abuse N.R. when she was approximately six-years-old. N.T. 5/16/16, pp. 73, 159, 169, 179. On a weekly basis, Appellant would enter the room that N.R. typically shared with her two younger sisters. Id. at 50, 53-54, 75-76. Appellant, dressed in only his underwear, would jump on top of N.R. while she was sleeping in one of the two beds. Id. at 53-

---

[1] Count 1: 18 Pa.C.S. § 3121(c).
[2] Count 2: 18 Pa.C.S. § 3125(b).
[3] Counts 4 and 7: 18 Pa.C.S. § 3126(a)(7).
[4] Counts 5 and 8: 18 Pa.C.S. § 6301(a)(1)(ii).
[5] Counts 6 and 9: 18 Pa.C.S. § 4304(a)(1).

N.R. typically slept in pajama pants and a t-shirt. Id. Appellant would then move his body on top of N.R. in an "up-and-down formation." Id. at 71. The movement would cause his penis to push through N.R.'s clothing and penetrate her vagina or anus. Id. N.R. could feel her clothes enter either her vagina or anus during these assaults and felt pain in those areas into the following day. Id. at 57. During these encounters, N.R. heard the Appellant breathe heavily and sometimes felt her pants become wet after he was finished. Id. at 71-72. On some occasions, when N.R. attempted to move or push the Appellant off of her, he would say "just a few more minutes" or otherwise attempt to change the subject. Id. at 57-58. When N.R. resisted or managed to push him off completely, Appellant would become angry and refuse to speak with her. Id. at 59-60. N.R. was afraid of Appellant, and testified that he would yell at her, strike her, call her a "bitch" or a "slut," and "exclude [her] from the family" by locking her in the bedroom if she resisted his advances. Id. at 59-60, 69-70.

N.R. attempted to disclose the abuse to her mother after the first incident. Id at 61. N.R. came downstairs one night and told her mother that she did not want to go upstairs because "whenever I'm sleeping my—he—my dad moves around a lot on top of me." Id. at 73. Appellant claimed that N.R. fabricated the abuse after she watched a movie with him. Id. at 160, 176. Although police responded to the home, N.R. subsequently recanted because her paternal aunt, paternal grandmother and the Appellant "kept telling me that it was a dream and nothing happened, and I just wanted everybody to be happy again." Id. at 62, 159-160. When N.R. expressed a desire to seek counseling at school, Appellant forbade it. Id. at 70.

Appellant had abused S.R. in a similar manner since she was five-years-old. Id. at 93. On multiple occasions and in multiple rooms of the home, Appellant would touch S.R.'s vagina with his fingers. Id. at 93-94. The most recent abuse occurred in the Appellant's bedroom:

2

Appellant called S.R. into his room and lifted her onto his bed. Id. at 95. As she lay on her stomach, S.R. felt the bed shake and heard the Appellant breath heavily as he lay on top of her body. Id. at 96-97. While both the Appellant and S.R. were fully clothed, he touched her vagina through her clothing. Id. at 98. After he finished touching her, Appellant's clothes would become wet and S.R.'s genitals would itch. Id. at 98-99. When S.R. would ask Appellant to stop, he would say "no" and told her not to tell anyone. When S.R. disclosed the abuse to her mother, the Appellant would become angry and yell at S.R. Id. at 99-100.

This Court also heard testimony from Appellant's ten-year-old son, T.R. He testified that the Appellant would occasionally enter his bedroom at night, get on top of him and abuse him in a manner similar to the assaults described by N.R. and S.R. Id. at 112-113. On some nights, T.R. would sleep in his sisters' bedroom and witnessed the Appellant perform the same acts on his sisters. Id. at 113-114.

In the days prior to May 30, 2015, N.R. again attempted to disclose the abuse. The victims' mother was in the kitchen with N.R. and discussed how Appellant occasionally "checks in on the girls." Id. at 136. When N.R. replied that it was "nothing to worry about," her mother asked her to clarify. Id. The following day, N.R. told her mother Appellant "would come in her bedroom and he would take his penis and grind on her." Id. at 137. N.R.'s mother was familiar with her daughter's description of Appellant's actions and statements during these encounters, as demonstrated by the following exchange:

> [MS. KOHLER]: When you—when [N.R.] told you what he would say to her while he was doing this, did that sound familiar to you?
>
> [VICTIMS' MOTHER]: Excuse me?
>
> Q: When [N.R.] told you what he would say to her when he was touching her—

3

A: Yes, it was very familiar to me because when I was on my menstrual, we wouldn't have sex, he would grind on me as well. And when I would tell him it was irritating me or hurting me, he would whisper in my ear as well just a little bit longer.

Q: Okay. And when he would do that to you, would you have your clothes on?

A: Yes.

Q: And did his penis ever go inside of you?

A: Yes.

Q: Okay. And that would be through your clothes?

A: Yes.

Id. at 138-139. Following this discussion, S.R. entered the room and asked whether N.R. and her mother were "talking about that thing that daddy does." Id. at 140. When N.R. said "shut up, [S.R.], you don't know what we're talking about," S.R. replied, "I do, because he does the same thing to me." Id.

In an attempt to corroborate her daughters' allegations, N.R.'s mother asked her neighbor and friend, Erayna Lin, to purchase a nanny camera disguised as an alarm clock. Id. at 23-25, 144. After Ms. Lin purchased the camera, the victims' mother placed it on the dresser in N.R.'s bedroom and pointed it at N.R.'s bed. Id. at 64-66, 145. The mother instructed N.R. to bring her the camera and put her clothes in a plastic bag if anything happened with the Appellant. Id. at 64-66. The victims' mother set the camera to record the next three to four days of activity in N.R.'s bedroom. Id. at 146.

On the evening of May 30, 2015, the mother was sleeping when she awoke to find that the Appellant had left their shared bedroom. Id. at 150-151. That night, N.R. was sleeping on her stomach, wearing pants and a t-shirt, when the Appellant came into her room and jumped on

4

top of her. Id. at 53-55. The Appellant began to move up and down while pressed against N.R.'s body and his penis penetrated her vagina or anus through her clothing. Id. at 53-55, 71.

During that time, the mother went to her bedroom door to investigate and heard someone jumping out of her daughter's bed. Id. at 151. N.R.'s bed makes a distinct creaking noise in response to pressure. Id. at 27, 152, 191. The mother contemporaneously overheard a conversation between Appellant and N.R. in which the Appellant asked whether the clock on the dresser was a camera. Id. After the mother unsuccessfully attempted to view the recorded video on the nanny camera, she woke her oldest son T.R.[6] and instructed him to take the camera to Ms. Lin's home. Id. at 154.

Ms. Lin viewed the video that night and subsequently called the police. Id. at 27. The video, with a time-stamp of May 30, 2015, initially showed someone entering the bedroom and turning the nanny camera towards the wall at approximately 12:36 a.m., followed by frequent creaking noises. See Ex. C-7. After several minutes, the recording showed a conversation between Appellant and the victims' mother, in which they discussed the origins of the camera. Id. After the Appellant left the room, N.R. removed her pajamas and placed them into a plastic bag. N.T. 5/16/15, p. 67.

In response to Ms. Lin's call, Middletown Township police responded to the Appellant's residence at 18 Cameo Road, Middletown Township, Bucks County at 2:57 a.m. Id. at 39. The police officers found Appellant in his bedroom, wearing red and blue striped boxers. Id. at 41. Appellant initially asked for time to clothe himself and smoke a cigarette; he subsequently began to pace nervously around the bedroom and cry uncontrollably. Id. at 41. While being

---

[6] Appellant has two biological children with the initials T.R.

transported to the police station, Appellant cried, struck the back seats of the patrol vehicle and repeatedly stated, "I didn't mean to do it." Id. at 42.

After being interviewed by the police, N.R. and S.R. travelled to the Children's Hospital of Philadelphia ("CHOP") for medical examinations. At trial, this Court received Nurse Practitioner Jennifer Molnar as an expert in forensic nursing and Sexual Assault Nurse Examination. N.T. 5/17/15, pp. 8. Ms. Molnar testified regarding her interview and physical examination of N.R. at CHOP. Id. at 10-12. In the course of her examination, Ms. Molnar observed thin, white vaginal discharge and three abrasions located on the labia minora of N.R.'s vaginal area. Id. at 16. Two of these abrasions contained lacerations and active bleeding. Id. When N.R. returned to CHOP for a follow-up examination on July 9, 2015, no injuries were observed in her vaginal area. Id. at 23. Ms. Molnar opined that the injuries found on May 30 were consistent with the sexual assault narrative provided by N.R. during the interview. Id. at 21, 27. Ms. Molnar further opined that the presence of three distinct injuries on three isolated areas of N.R.'s vagina was likely related to injury from penetration. Id. at 26. Ms. Molnar could not, however, confirm whether these injuries were caused by skin-to-skin contact or by clothing. Id. at 40.

Following the Appellant's arrest, Middletown Township Detective David E. Strother submitted the Appellant's boxer shorts and the plastic bag containing N.R.'s pajama pants and yellow t-shirt to the Pennsylvania State Police Crime Lab for analysis. N.T. 5/16/15, pp. 184-185. The serology laboratory identified blood on the waistband of N.R.'s pants, hair-like debris on her yellow t-shirt and semen in the front-crotch area of Appellant's boxer shorts. Id. at 186-188. Detective Strother obtained buccal swabs from both individuals and submitted them to the Crime Lab for DNA comparison testing. Id.

6

The resulting lab report confirmed that the sperm sample from Appellant's underwear was consistent with the Appellant's reference DNA profile. Id. at 189. The report further confirmed that light blue polyester fiber collected from a scraping of Appellant's boxer shorts was "visually microscopically and instrumentally consistent with the known light blue polyester fibers from . . . [N.R.]'s pajama pants." Id. at 190. Detective Strother testified that this result indicated that the two samples shared a common origin. Id. Finally, Detective Strother recorded video and audio of himself attempting to recreate the noise that N.R.'s bed would create in response to pressure. Id. at 190-191. Detective Strother testified that the noises he heard during his investigation were consistent with the creaking noises depicted in the May 30, 2015 nanny camera video. Id. at 191.

## II.    PROCEDURAL HISTORY

On July 1, 2015, Appellant was charged with Rape of a Child, Involuntary Deviate Sexual Intercourse with a Child, Aggravated Indecent assault of a Child, two counts of Indecent Assault of a Person less than 13 Years of Age, two counts of Corruption of Minors, and two counts of Endangering the Welfare of Children.

On November 9, 2015, Appellant pled guilty before the Honorable Jeffrey L. Finley to charges of Rape of a Child, Involuntary Deviate Sexual Intercourse with a Child, and Indecent Assault of a Person less than 13 Years of Age. In the course of his plea, Appellant acknowledged that the Court could impose the sentence for each offense consecutively to each other. N.T. 11/9/15, p. 7. On December 29, 2015, Defendant moved to withdraw his guilty plea, and defense counsel subsequently filed a Motion to Withdraw as Counsel on January 5, 2016. The Honorable Jeffrey L. Finley granted counsel's Motion to Withdraw and appointed conflict counsel on January 20, 2016. On February 22, 2016, the Court granted Appellant's Motion to Withdraw Plea of Guilty. On May 16, 2016, Appellant proceeded to trial before this Court on all

7

original charges. In the course of Appellant's waiver of his right to a jury trial, he again affirmed that he understood the possibility that this Court could impose consecutive sentences upon a guilty verdict. N.T. 5/16/16, pp. 18-19.

On May 17, 2016, following a two-day non-jury trial, this Court found Appellant guilty of Rape of a Child, Aggravated Indecent Assault of a Child, two counts of Indecent Assault of a Person less than 13 Years of Age, two counts of Corruption of Minors, and two counts of Endangering the Welfare of Children. N.T. 3/17/15, p. 62. We found Appellant not guilty of Count 3, Involuntary Deviate Sexual Intercourse with a Child. Id.

During sentencing, this Court heard victim impact testimony from the victims' mother. Id. at 67. We additionally heard testimony from the Appellant, who discussed his struggles with drug and sex addiction and apologized to the victims. Id. at 74-77. We adopted and considered the findings of a previously submitted assessment by the Sexual Offenders Assessment Board ("SOAB"), which found that Appellant met the criteria for classification as a sexually violent predator ("SVP"). Id. at 63-64, 81. Appellant waived his right to an SVP hearing, and this Court found that he met the criteria to be classified as an SVP pursuant to the Sexual Offender Registration and Notification Act ("SORNA") 42 Pa.C.S. § 9799 et seq. N.T. 5/17/15, p. 64.

We additionally considered a domestic violence investigation report and history of the Appellant. Id. at 64, 81. See Ex. CS-1. The report described Appellant's prior criminal convictions as follows: In 1990, Appellant was convicted of Robbery, Receiving Stolen Property and Simple Assault, and was sentenced to eleven to 23 months' incarceration. In 1996, Appellant was convicted of Burglary, Criminal Trespass and a Controlled Substance offense, and was sentenced to one to twelve months' incarceration. In 1997, Appellant was convicted of Defiant Trespass, Disorderly Conduct and Harassment, and was sentenced to a consecutive one-

8

year period of probation. Finally, in 2013, Appellant was convicted of four counts of Harassment, and was sentenced to four consecutive sentences of 90 days' probation on each count. See Ex. CS-1.

This Court considered the sentencing guidelines and addressed them on the record. The guidelines for Corruption of Minors and Endangering the Welfare of Children each called for 27 to 40 months in the standard range. Id. at 79-80. Further, during his guilty plea on November 9, 2015, the Honorable Jeffrey L. Finley apprised Appellant of the sentencing guidelines for the other charged offenses. The guidelines for Rape of a Child called for seventeen to twenty years in the standard range. N.T. 11/9/15, p. 25. The guidelines for Indecent Assault of a Person less than 13 Years of Age called for 27 to 40 months in the standard range. Id.

In imposing sentence, we recognized that the Appellant has "in some part accepted responsibility for what he has done." N.T. 5/17/15, p. 81. However, we found that Appellant committed a "horrific crime" that "profoundly affected" the child victims as evidenced by their testimony. Id. We further noted that this was "not one act of this victimization but rather that the children were victimized repeatedly over a period of years." We concluded that anything less than a lengthy sentence would "diminish the magnitude of this crime."

We sentenced Appellant to an aggregate 21-and-one-half to 47 years' incarceration. Specifically, on Count 1, Rape of a Child, we sentenced Appellant to 18 to 40 years' incarceration; on Count 2, Aggravated Indecent Assault of a Child, we sentenced Appellant to five to ten years' incarceration running concurrently with Count 1; on Count 5, Corruption of Minors, we sentenced Appellant to three-and-one-half to seven years' incarceration running consecutively to Count 2 and concurrently with Count 1; On Count 6, Endangering the Welfare of Children, we sentenced Appellant to three-and-one-half to seven years' incarceration running

9

consecutively to Count 5 and concurrently with Count 1; On Counts 7, 8 and 9, we sentenced Appellant to three-and-one-half to seven years' incarceration running concurrently with each other and consecutively to Count 1. N.T. 3/17/16, pp. 81-82. We imposed no further penalty on Count 4. Id.

On May 26, 2016, Appellant filed a Motion for Reconsideration of Sentence. On July 5, 2016, a hearing was held, and this Court heard additional victim impact testimony from victims N.R. and S.R. N.T. 7/5/16, pp. at 2-6. We also heard additional testimony from the Appellant, who reiterated his struggles with drug addiction. Id. at 8-9. We subsequently denied Appellant's Motion.

Appellant did not file a direct appeal. On June 9, 2017, Appellant filed a "Petition for Redress of Grievance Pro-Se." We appointed counsel, and Appellant subsequently filed an Amended Petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 et seq on December 26, 2017. On January 9, 2018, upon agreement of the parties, this Court granted Appellant relief in the form of reinstating his right to file a direct appeal *nunc pro tunc*. Appellant filed a timely Notice of Appeal on February 7, 2018.

III.   **MATTERS COMPLAINED OF ON APPEAL**

On February 14, 2018, this Court issued an Order pursuant to Pa.R.A.P. 1925(b) directing Appellant to file a Concise Statement of Matters Complained of on Appeal. On March 2, 2017, this Court issued an Order pursuant to Pa.R.A.P. 1925(b)(2) that extended Appellant's time to file such a statement until March 21, 2018. On March 19, 2018, Appellant's counsel filed a Statement Pursuant to Pa.R.A.P. 1925(c)(4) and notified this Court that he will be filing an

10

Anders/McClendon[7] Brief with the Pennsylvania Superior Court. This Statement further notified the Court that Appellant wished to raise the following issues, *verbatim*:

1. The evidence was insufficient to support the verdict because there was no DNA evidence connecting him to the crime; and

2. The sentence was manifestly excessive, both because he was not on parole or probation at the time the crimes occurred, and because sentences on all counts were not made to run concurrently to one another.

## IV. ANALYSIS

Appellant challenges the sufficiency of the evidence and this Court's sentence imposed. Both arguments are addressed below:

### A. Sufficiency of the Evidence

Appellant argues that the Commonwealth provided insufficient evidence to convict him of these offenses because the there was no DNA evidence that connected him to the crimes. Appellant waived this claim because he failed to specify the element or elements upon which the evidence was insufficient.

When challenging the sufficiency of the evidence, an appellant's Statement pursuant to Rule 1925(b) must specify the "element or elements upon which the evidence was insufficient" to preserve the issue for appeal. Commonwealth v. Williams, 959 A.2d 1252, 1257 (Pa. Super. Ct. 2008). This standard is particularly important in cases where an appellant is convicted of multiple crimes, and where each crime contains numerous elements. Commonwealth v. Gibbs, 981 A.2d 274, 281 (2009) (citing Williams, 959 A.2d at 1258 n.8).

Appellant's Rule 1925(b) statement lacks the requisite specificity to preserve his sufficiency claim. This Court convicted Appellant of Rape of a Child, Aggravated Indecent Assault, and two counts each of Indecent Assault, Corruption of Minors, and Endangering the

---

[7] Anders v. California, 386 U.S. 738 (1967); Commonwealth v. McClendon, 434 A.2d 1185 (Pa. 1981).

Welfare of Children, respectively. Appellant's statement fails to identify any element or elements, let alone any specific crime, upon which the evidence was insufficient to convict. Because Appellant's Rule 1925(b) statement lacks the requisite specificity to apprise the Commonwealth or this Court of the basis for his claims, his sufficiency challenge is deemed waived.

However, even if Appellant properly preserved his sufficiency claim, the Commonwealth's unrefuted evidence was sufficient to support a conviction for the above-referenced offenses. While the Commonwealth did, in fact, present "DNA evidence" to corroborate the victims' testimony, the prosecution's remaining evidence, standing alone, constituted sufficient evidence to convict Appellant of each crime.

Generally, the test for a challenge to the sufficiency of the evidence is whether "the Commonwealth established beyond a reasonable doubt each of the elements, considering all the evidence admitted at trial, and drawing all reasonable inferences therefrom in favor of the Commonwealth . . . ." Commonwealth v. Brown, 48 A.3d 426, 430 (Pa. Super. Ct. 2012) (citation omitted). The entire record must be evaluated in "aggregate and not as fragments isolated from the totality of evidence." Commonwealth v. Rosado, 684 A.2d 605, 607-08 (Pa. Super. Ct. 1996) (citation omitted). The trier of fact bears the sole responsibility of assessing the credibility of witnesses and weighing the evidence at trial, and is free to believe all, part, or none of the evidence or testimony presented. Id. A mere conflict in testimony does not render a verdict insufficient. Commonwealth v. Atwood, 601 A.2d 277, 288 (Pa. Super. Ct. 1991). Wholly circumstantial evidence may be used to sustain the Commonwealth's burden. Commonwealth v. Markman, 916 A.2d 586, 598 (Pa. Super. Ct. 2007) (citation omitted). Finally, the standard of review is whether the verdict is so contrary as to "shock one's sense of

12

justice." Commonwealth v. Shaffer, 40 A.3d 1250, 1253 (Pa. Super. Ct. 2012) (citation omitted).

As an initial matter, we note that Appellant specifically conceded the charges of Indecent Assault, Corruption of Minors, and Endangering the Welfare of Children during closing argument at trial. N.T. 5/17/15, p. 46. Therefore, regarding this Court's guilty verdict on those specific charges, Appellant's sufficiency claim is deemed waived. Schmidt v. Martz, 55 A.2d 588, 589 (Pa. Super. Ct. 1947) (holding party may not expressly admit or deliberately waive facts at trial and subsequently question those facts on appeal).

As to the remaining offenses, a person commits Rape of a Child when he or she "engages in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S. § 3121(c). Sexual intercourse, in addition to its ordinary meaning, is defined as, "intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S. § 3101. A person commits Aggravated Indecent Assault of a Child when he or she "engages in penetration, however slight, of the genitals or anus of a complainant [that is less than 13 years of age] with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures." 18 Pa.C.S. § 3125(b).

Appellant argues that this Court could not have found him guilty of *any* of the charges because the Commonwealth did not introduce DNA evidence that connected him to the crimes. Appellant conveniently ignores the scientific evidence gleaned from the Pennsylvania State Police Crime Lab report. The report identified Appellant's semen on his red and blue striped boxer shorts through DNA comparison testing. The report additionally identified blue polyester debris on N.R.'s yellow t-shirt that was visually consistent with the blue polyester fibers on Appellant's boxer shorts. These findings corroborated N.R. and S.R.'s accounts of Appellant's

13

sexual assaults against them. Both victims described multiple incidents in which the Appellant would grind his penis against their genitals while wearing only his boxer shorts. Both victims further testified that Appellant's boxer shorts would occasionally become wet after an assault, indicating the presence of ejaculate.

Further, even without the above-referenced scientific evidence, the Commonwealth provided sufficient evidence to convict Appellant of these crimes. Initially, N.R. and S.R.'s uncorroborated testimony, if believed by the fact-finder, is sufficient to support a conviction for all of the charged sexual assault crimes. See generally Commonwealth v. Poindexter, 646 A.2d 1211, 1215 (Pa. Super Ct. 1994); 18 Pa.C.S. § 3106 ("The testimony of a complainant need not be corroborated in prosecutions under this chapter").

Even so, the victims' accounts were corroborated by testimony from their mother and T.R., video and audio recordings from the nanny camera in the children's bedroom, N.R.'s medical examination report, and Appellant's own actions and statements in police custody. The video and audio recorded by the nanny camera, Detective Strother's supplemental investigation, and the mother's description of N.R.'s bed corroborated the victim's testimony regarding the bed's distinctive creaking noise heard during the assaults. Further, ten-year-old T.R.'s testimony of the assaults he witnessed Appellant commit against his sisters provided additional corroboration. Finally, to the extent that Appellant argues that the Commonwealth failed to produce evidence of penetration to support his convictions for Rape and Aggravated Indecent Assault, Ms. Molnar's expert testimony rejects this defense. Ms. Molnar concluded that the injuries found in N.R.'s vaginal area were consistent with the victim's description of Appellant grinding his penis against her genitals on May 30, 2015. Ms. Molnar further concluded that the nature of the injuries likely related to penetration.

14

In finding Appellant guilty of Rape of a Child, Aggravated Indecent Assault of a Child, Indecent Assault of a Child, Corruption of Minors, and Endangering the Welfare of Children, this Court found that the Commonwealth established each element of these crimes beyond a reasonable doubt. This Court weighed all of the evidence, evaluated the credibility of all witnesses, and considered all reasonable inferences that could be drawn from the trial record. Notwithstanding Appellant's contention the Commonwealth presented no DNA evidence during trial, the prosecution satisfied its burden and provided sufficient evidence to convict Appellant of these offenses. Thus, Appellant's sufficiency argument fails.

## B. Sentencing

Appellant argues that this court abused its discretion and improperly imposed a manifestly excessive sentence. Specifically, Appellant argues that we failed to consider the fact that he was not on probation or parole at the time of the instant offense, and that we erred in imposing consecutive sentences. We find that this Court issued a sentence well within its discretion.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." Commonwealth v. Fullin, 892 A.2d 843, 847 (Pa. Super. Ct. 2006) (citation omitted). To establish an abuse of discretion, an appellant must show, by reference to the record, "that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision." Id.

When imposing a sentence, the sentencing court must consider the following factors: (1) protection of the public, (2) gravity of offense in relation to impact on victim and community, (3) rehabilitative needs of the defendant, and (4) sentencing guidelines. 42 Pa.C.S. § 9721(b). The sentencing court "has wide discretion in sentencing and [may], on the appropriate record and for

15

the appropriate reasons, consider any legal factor in imposing a sentence in the aggravated range." Commonwealth v. Stewart, 867 A.2d 589, 593 (Pa. Super. Ct. 2005) (citation omitted). "[T]he sentencing court may deviate from the guidelines . . . to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community . . . ." Commonwealth v. Warren, 84 A.3d 1092, 1097 (Pa. Super. Ct. 2014) (citation omitted). When sentencing a defendant outside of the sentencing guidelines, the sentencing court "must state its reasons for departing from the guidelines on the record." Id. The sentencing court's reasoning must include "the factual basis and specific reasons which compelled [deviation] from the guideline range." Commonwealth v. Bowen, 55 A.3d 1254, 1264 (Pa. Super. Ct. 2012) (citation omitted).

The sentencing court has discretion to run sentences concurrently or consecutively to other sentencing being imposed. Commonwealth v. Mouzon, 828 A.2d 1126, 1130-1131 (Pa. Super. Ct. 2003). The imposition of consecutive rather than concurrent sentences will raise a substantial question of excessiveness in only "the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." Commonwealth v. Caldwell, 117 A.3d 763, 769 (Pa. Super. Ct. 2015) (citations omitted).

This Court thoroughly explained its reasoning to Appellant and provided a specific, factual basis for the aggregate sentence on the record. We found that imposing consecutive sentences for each victim was appropriate due to the gravity of the offense and the need for community protection. Accordingly, we imposed the sentences related to Appellant's assaults against N.R.—Counts 1, 2, 5, and 6—concurrently with each other and consecutively with the

16

sentences related to the assaults against S.R.—Counts 7, 8 and 9. In two separate proceedings, Appellant acknowledged that he understood the sentencing court's ability to impose consecutive sentences following a plea or guilty verdict. The imposition of consecutive sentences to reflect multiple sexual assaults against two separate child victims does not raise a substantial question of excessiveness.

We additionally imposed individual sentences in the aggravated range of the guidelines. While we acknowledged and considered Appellant's acceptance of responsibility and past struggles with addiction, these mitigating factors did not outweigh this Court's concerns regarding the gravity of the offense, and the need for community protection. Similarly, the fact that Appellant was not on supervision at the time of the instant offense does not outweigh the aggravating sentencing factors in this case. We determined that only a lengthy sentence would address Appellant's repeated and lengthy victimization of his two biological daughters and the profound effect those assaults had on the victims.

Consequently, we imposed consecutive sentences in the aggravated range of the sentencing guidelines. Our reasoning is set forth on the record and was clearly communicated to Appellant. Thus, we believe that this Court did not abuse its discretion in imposing sentence.

## V.   CONCLUSION

For the foregoing reasons, we respectfully submit that Appellant's argument is without merit and his appeal should be denied.

DATE:                                                              BY THE COURT:

April 25, 2018

REA B. BOYLAN, J.

17