J-A08039-23

**NON-PRECEDENTIAL DECSION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER J. JULIAN | : | |
| | : | |
| Appellant | : | No. 419 WDA 2022 |

Appeal from the Judgment of Sentence Entered March 10, 2022
In the Court of Common Pleas of McKean County Criminal Division at
No(s): CP-42-CR-0000234-2020

BEFORE: STABILE, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED: MAY 22, 2023**

Christopher J. Julian (Julian) appeals[1] from the judgment of sentence imposed by the Court of Common Pleas of McKean County (trial court) after a jury convicted him of aggravated cruelty to animals, cruelty to animals and defiant trespass.[2] On appeal, Julian challenges (1) the sufficiency of evidence for his aggravated cruelty to animals and defiant trespass convictions, (2) the trial court's final charge to the jury, and (3) the application of the deadly

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Julian purports to appeal from the jury verdict rendered on October 12, 2021. His appeal, however, properly lies from the March 10, 2022 judgment of sentence. **See Commonwealth v. Pratt**, 930 A.2d 561, 562 n.1 (Pa. Super. 2007). We have corrected the caption accordingly.

[2] 18 Pa.C.S. §§ 5534(a)(2), 5533(a) and 3503(b)(1)(i), respectively.

weapon used enhancement to his sentence for aggravated cruelty to animals. After review, we affirm his convictions but vacate his judgment of sentence and remand for resentencing.

**I.**

On May 29, 2020, Julian was walking through the property of Thomas Haberberger (Haberberger) even though Haberberger told him a week earlier that he was no longer allowed to do so. Around the same time that Julian was walking through the property, Haberberger returned home from work and let his four dogs out of the house. The dogs soon found Julian and began barking at him, and Julian pulled out a handgun and shot one of the dogs, a male Pitbull Lab mix named Mocha. The gunshot went through Mocha's back and exited through his rear leg, just missing his spine. Amazingly, Mocha was not paralyzed by the gunshot, as he returned to the house and crawled under the porch, leaving behind a trail of blood.

Upon seeing the blood, Haberberger realized that Mocha had been shot and had his son take the dog to a local veterinarian. When it was determined that surgery and x-rays were needed, Mocha was taken to an animal hospital two hours away near Buffalo. There, the treating veterinarian cleaned and stapled the entry and exit wounds but could not remove the bullet fragments that were left. Mocha would go on to make a full recovery but could not walk normally or jump for two months after being shot.

At his jury trial, Julian admitted that he shot Mocha but claimed justification, testifying in his own defense that he shot Mocha only after the dog attacked and bit him. At the end of trial, the jury found him guilty of the offenses mentioned above.[3] As a part of its verdict, the jury determined that he both used and possessed a deadly weapon in committing aggravated cruelty to animals and cruelty to animals. When Julian returned for sentencing, the trial court applied the deadly weapon used enhancement in sentencing him to 15 to 36 months' imprisonment for aggravated cruelty to animals.[4] After his post-sentence motion was denied without hearing,[5] Julian filed this appeal.

On appeal, Julian raises six issues for our review:

1. Whether the trial court erred by not granting an acquittal or a new trial for Aggravated Cruelty to Animals-Causing SBI/Death when the Commonwealth did not prove beyond a reasonable doubt that the dog suffered the alleged serious bodily injury?

---

[3] Julian was acquitted of criminal attempt to commit aggravated cruelty to animals.

[4] The trial court imposed concurrent probationary sentences for defiant trespass and cruelty to animals.

[5] After sentencing on March 10, 2022, the trial court allowed trial counsel to withdraw and appointed new counsel. On her last day to do so, newly-appointed counsel filed a motion for an extension of time to file a post-sentence motion. *See Commonwealth v. Horst*, 481 A.2d 677, 677-78 (Pa. Super. 1984) (finding that a defendant may toll the time in which to file an appeal if within the established ten-day period, the defendant files a request for extension of time in which to file a post-sentence motion). After the trial court granted the extension, Julian filed his post-sentence motion on March 30, 2022.

2. Whether the trial court erred by not granting an acquittal or a new trial for Defiant Trespass, when the Commonwealth did not prove beyond a reasonable doubt that actual communication was given by the dog owner to Julian, not to come onto his land/right of way, when the testimony showed that [Julian] was using the right of way with the dog owner's knowledge and permission for the past seven years?

3. Whether the trial court abused its discretion by not granting a new trial when the jury instruction proposed by the Commonwealth regarding willful trespass was not appropriate under the circumstances of this case?

4. Whether the trial court abused its discretion and a new trial shall be granted when, as per Commonwealth's request, the court gave to the jury an instruction regarding a specific intent to kill?

5. Whether the trial court abused its discretion when asked the jury to make a finding regarding the DWE/Used enhancement?

6. Whether the trial court abused its discretion when sentenced Mr. Julian to a sentence with a DWE/Used enhancement, when the victim in the case was a dog and when the appropriate enhancement would have been DWE/Possessed?

Julian's Brief at 4-7 (cleaned up).

## II.

## A.

Julian first argues that the Commonwealth failed to present sufficient evidence to convict him of aggravated cruelty to animals. While admitting that he shot Mocha and caused bodily injury, Julian contends that his actions did not cause serious bodily injury because Mocha did not suffer "serious,

permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ."[6]

The offense of aggravated cruelty to animals is defined, in relevant part, as follows: "A person commits an offense if the person intentionally or knowingly … [v]iolates section 5532 (relating to neglect of animal) or 5533 (relating to cruelty to animal) **causing** serious bodily injury to the animal or the death of the animal." 18 Pa.C.S. § 5534(a) (emphasis added). Serious bodily injury is defined as "[b]odily injury that creates a substantial risk of

_____

[6] Our standard of review for a sufficiency challenge is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. In determining whether the evidence was sufficient to support a defendant's conviction, we must review the evidence admitted during the trial along with any reasonable inferences that may be drawn from that evidence in the light most favorable to the Commonwealth as the verdict winner. If we find, based on that review, that the jury could have found every element of the crime beyond a reasonable doubt, we must sustain the defendant's conviction. Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder.

*Commonwealth v. Hummel*, 283 A.3d 839, 846 (Pa. Super. 2022) (citations omitted).

- 5 -

death or causes serious, permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ." 18 Pa.C.S. § 5531.[7]

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we find that there was sufficient evidence for the jury to conclude that Mocha suffered "serious bodily injury." First, the Commonwealth presented photographs showing that Mocha's entrance wound continued to swell even two weeks after being shot. *See* N.T., 10/12/21, at 19. Haberberger testified that the swelling was caused by fluid that had built up on the top of the spine. *Id*. Second, Haberberger testified that it took Mocha two months before he could walk normally, telling the jury that Mocha "was really tender, you know, like he didn't want to jump or anything and after about two months he finally was able to jump." *Id*. at 25. Third, the treating veterinarian at the animal hospital testified that he cleaned up and closed the entry and exit wounds from the gunshot, with the entry wound requiring four to five staples while the exit wound required four. *Id*. at 62-63. Fourth, he testified that x-rays showed that Mocha had shrapnel from the bullet that could not be removed and could require surgery in the future if it

---

[7] This differs from aggravated assault under 18 Pa.C.S. § 2702, which does not require proof that serious bodily injury was inflicted but only that an attempt was made to cause such injury. *Commonwealth v. Rosado,* 684 A.2d 605, 608 (Pa. Super. 1996). Where the victim does not sustain serious bodily injury, the Commonwealth must prove that the appellant acted with specific intent to cause serious bodily injury. *Commonwealth v. Dailey,* 828 A.2d 356, 359 (Pa. Super. 2003).

became a problem. *Id*. at 63. He also testified that the x-rays were taken to look for signs of internal damage because Mocha was limping. *Id*. at 64.

Taken together, we find that the Commonwealth presented sufficient evidence establishing that Mocha suffered "serious, permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ." While not paralyzed by the gunshot, Mocha was still unable to walk or jump normally for two months, as he continued to suffer swelling near his spine because of the buildup of fluid. In addition, the Commonwealth presented evidence that the bullet shattered inside Mocha while it traveled through him, leaving behind metallic fragments that the veterinarian could not remove. While those fragments did not appear to be a concern at the time, the veterinarian testified that they could require surgery in the future if they became a problem.

Again, under our standard of review for a sufficiency challenge, we are obligated to view the evidence in the light most favorable to the Commonwealth as verdict winner. Applying that standard, while Mocha did not suffer permanent injuries, the Commonwealth still presented enough evidence to establish that the gunshot caused the dog to suffer "serious, permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ." Accordingly, we find there was sufficient evidence to convict Julian of aggravated cruelty to animals.

## B. Defiant Trespass

Julian next asserts that the Commonwealth did not present sufficient evidence to convict him of defiant trespass. The crime of defiant trespass is set forth in 18 Pa.C.S. § 3503(b)(1), which provides, in relevant part: "[a] person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by: (i) actual communication to the actor[.]" Defiant trespass contains an element of intent or *mens rea*; thus, a person committing that offense must know he is not privileged to enter the premises. **Commonwealth v. White**, 174 A.3d 61 n.1 (Pa. Super. 2017) (observing that defiant trespass under 18 Pa.C.S.A. § 3503(b)(1) includes an element of intent or *mens rea*, similar to the crime of criminal trespass under § 3503(a)(1)). To establish a violation under subsection 3503(b)(1)(i), it is necessary to prove that the defendant: (1) entered or remained upon property without a right to do so; (2) while knowing that he had no license or privilege to be on the property; and (3) after receiving direct or indirect notice against trespass. **Commonwealth v. Wanner**, 158 A.3d 714, 718 (Pa. Super. 2017).

At trial, Haberberger testified about telling Julian that he was no longer allowed on the property because of an incident that happened a week before Mocha was shot. According to Haberberger, he heard a commotion on the

property with his dogs and found Julian with a friend who was waving a stick

at the dogs.

> Q. And did you tell him you're not allowed on my property, or how would he know that?
>
> A. I did. My wife and I went down. We heard the dogs' commotion again and there was a gentleman waving a big stick, like a walking stick at the dogs, and we said that he's no longer welcome on our property.
>
> Q. Did he argue with you?
>
> A. No, not at all.

N.T., 10/12/21, at 21.

When asked about the incident again, Haberberger reiterated that he

told both Julian and his friend they were not allowed on his property.

> Q. … Who did you speak to when you said they weren't permitted to be there anymore?
>
> A. Basically both of them. I just said, look, you guys, this is it, don't come out here anymore.
>
> Q. And so both of these men would have heard that?
>
> A. Um-hmm.

*Id*. at 36-37.

After review, we find that there was sufficient evidence for the jury to

conclude that Julian knew he was no longer allowed on the property. While it

is true that Julian walked on the property for several years with no incident,

Haberberger testified unequivocally that Julian's permission to be on the

property was revoked after Julian's friend waved a stick at the dogs. Indeed,

as shown by the above testimony, Haberberger told Julian he was not allowed on the property and Julian did not argue with him. Then, when defense counsel tried to suggest that maybe Haberberger's comment was directed only at Julian's friend, Haberberger clarified that it was directed to both. The jury was free to credit this testimony without any need for corroboration from another witness. Thus, Julian's sufficiency challenge to defiant trespass fails.

## III.

Julian next contends that the trial court committed two errors in its final charge to the jury. First, he argues that the court erred in instructing the jury on the definition of willful trespass in connection with its justification instruction. Second, he asserts that the court erred in instructing the jury that firing a firearm in the general area of vital organs is enough to prove a specific intent to kill.

Julian, however, never objected to the instructions. To preserve a challenge to the adequacy or omission of a particular jury instruction, the defendant must make a specific and timely objection to the instruction at trial before the jury deliberates. *Commonwealth v. Smith*, 206 A.3d 551, 564 (Pa. Super. 2019); Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of."); Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as

error, unless specific objections are made thereto before the jury retires to deliberate.").

"[I]n the criminal trial context, the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points." ***Commonwealth v. Hitcho***, 123 A.3d 731, 756 (Pa. 2015) (internal quotation marks and citation omitted). Furthermore, "a defendant waives subsequent challenges to the propriety of the jury charge on appeal if he responds in the negative when the court asks whether additions or corrections to a jury charge are necessary." ***Commonwealth v. Moury***, 992 A.2d 162, 178 (Pa. Super. 2010).

First, concerning the willful trespass instruction, Julian asked that the jury be instructed that a person may kill or attempt to kill a dangerous dog that is attacking them. In response, the Commonwealth requested that the jury be instructed that such a defense was inapplicable if Julian was a "willful trespasser." When asked if he objected to this, Julian stated he had "no reason to dispute that the law is the law and you're entitled to instruct the jury on that." N.T., 10/12/21, at 175. When asked again if he objected to

the definition being given, he responded he did not. *Id*. at 180. Thus, his claim is waived.[8]

The same holds true for his claim that the jury should not have been instructed about intent to kill in connection with cruelty to animals. Again, when the trial court stated that it would instruct the jury in such a manner, Julian answered that he had no issues with the instructions. *Id*. at 184. Additionally, after the trial court gave its instructions, Julian again voiced no objection. *Id*. at 196. Accordingly, his claim is waived. *See Moury*, 992 A.2d at 178-79 (finding defendant waived his challenge to the jury's instructions because he did not object when the court charged the jury and defense counsel responded in the negative when the court asked if the defense wished to add anything to the jury instructions).

**IV.**

Finally, Julian alleges that the trial court erred in having the jury determine whether he used a deadly weapon in committing aggravated cruelty to animals and, after the jury determined that he did, applying the enhancement at sentencing.

---

[8] Even if preserved, no relief would be due. Julian's request for the instruction was based on the dangerous dog section of the Dog Law, 3 P.S. § 459-502-A. That section, however, "shall not apply if the threat, injury or damage was sustained by a person who, at the time, was **committing a willful trespass** or other tort upon the premises occupied by the owner of the dog[.]" 3 P.S. § 459-507-A (emphasis added).

Application of the deadly weapon enhancement implicates the discretionary aspects of sentence. ***See Commonwealth v. Rhoades***, 8 A.3d 912, 915-16 (Pa. Super. 2010). "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." ***Commonwealth v. McAfee***, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted; brackets in original).

Julian satisfied the two first two requirements by filing a timely notice of appeal and post-sentence motion. As for the third requirement, he fails to include a Pa.R.A.P. 2119(f) statement in his brief. Failure to do so, however, does not automatically waive an appellant's argument unless the Commonwealth lodges an objection to the omission. ***See Commonwealth v. Roser***, 914 A.2d 447, 457 (Pa. Super. 2006). As a result, because the Commonwealth raises no objection to Julian's failure to include a Pa.R.A.P. 2119(f) statement, we need not find waiver. Finally, this Court has found that

application of the deadly weapon enhancement raises a substantial question.

***See Commonwealth v. Rhodes***, 8 A.3d 912, 916 (Pa. Super. 2010). Thus, we address the merits of his sentencing claim.[9]

The deadly weapon enhancement provisions of the Sentencing Guidelines provide that an enhancement "shall apply to each conviction offense for which a deadly weapon is possessed or used." 204 Pa. Code § 303.10(a)(4). The "used" enhancement provides:

> (2) When the court determines that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix (§ 303.17(b)). An offender has used a deadly weapon if any of the following were employed by the offender **in a way that threatened or injured another individual**:
>
> (i) Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded, or
>
> (ii) Any dangerous weapon (as defined in 18 Pa.C.S. § 913), or

---

[9] Our standard of review of a discretionary aspect of sentence challenge is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Antidormi***, 84 A.3d 736, 760 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014) (citation omitted).

          (iii) Any device, implement, or instrumentality capable of producing death or serious bodily injury.

204 Pa. Code § 303.10(a) (emphasis added). To establish use of a deadly weapon under this provision, the record must show that the defendant used a weapon to threaten or injure the victim while committing the particular offense. **See***, e.g.*, ***Commonwealth v. Shull***, 148 A.3d 820, 831 (Pa. Super. 2016).

As noted, the deadly weapon used enhancement under § 303.10(a)(2) applies only when the offender employs the deadly weapon in a way that "threatened or injured another individual." Julian focuses his sentencing claim on the use of the word "individual," arguing that given its common usage, the word refers only to human victims and does not apply to animals such as dogs. Julian contrasts this with the deadly weapon possessed enhancement under § 303.10(a)(1), which applies when the deadly weapon is "on the offender's person or within his immediate physical control." 204 Pa. Code § 303.10(a)(1). As result, Julian asserts that the trial court should have applied the deadly weapon possessed enhancement, which is not limited to a human victim, rather the deadly weapon used enhancement, which applies only when the victim is an "another individual." We agree.

To resolve Julian's claim, we apply the rules of statutory construction.[10]

As this Court has explained:

> In interpreting a statute, we are guided by the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "The plain language of the statute is the best indicator of the legislature's intent. To ascertain the plain meaning, we consider the operative statutory language in context and give words and phrases their common and approved usage." ***Commonwealth v. Chesapeake Energy Corp.***, 247 A.3d 934, 942 (2021). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). This Court must give effect and ascribe meaning to each word and provision chosen by our legislature, assuming none is mere surplusage. ***See***, ***e.g.***, ***Commonwealth v. McClelland***, 660 Pa. 81, 233 A.3d 717, 734 (2020) ("Some meaning must be ascribed to every word in a statute … and there is a presumption that disfavors interpreting language as mere surplusage."); 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions.").

***Commonwealth v. Ruffin***, 282 A.3d 796, 802 (Pa. Super. 2022).

Furthermore, in discerning the legislative meaning of words and phrases, we may consult dictionary definitions. ***See Commonwealth v. Gamby***, 283 A.3d 298, 307 (Pa. 2022). ***See also THW Group, LLC v. Zoning Board of***

---

[10] "[A]lthough the Pennsylvania Commission on Sentencing, rather than the General Assembly itself, directly adopts the sentencing guidelines and thus they are not statutes per se, the guidelines nevertheless retain a legislative character, as the General Assembly may reject them in their entirety prior to their taking effect, subject, of course, to gubernatorial review." ***Commonwealth v. Bonner***, 135 A.3d 592, 597 (Pa. Super. 2016) (cleaned up).

***Adjustment***, 86 A.3d 330, 336 (Pa. Cmwlth. 2014) ("[W]here a court needs to define an undefined term, it may consult dictionary definitions for guidance.").

As expected, after consulting several dictionary definitions for "individual" when used as a noun, we find the word is consistently defined as of or relating to humans or persons in some manner.[11]  That this was the Sentencing Commission's intended meaning is confirmed when we look at the history of the deadly weapon used enhancement and the Sentencing Commission's commentary.  Until the Sixth Edition of the Sentencing Guidelines became effective in June 2005, the deadly weapon used enhancement under § 303.10(a)(2) applied not only to offenders who used a deadly weapon in a way that "threatened or injured another individual," but also "in the furtherance of the crime."  As a result, in 2003, when our Supreme

_____

[11] For instance, Webster's Third New International Dictionary defines the first subsense of "individual," when used as a noun, as a "single human being as contrasted with a social group or institution."  Webster's Third New Int'l Dictionary, 1152 (1993) (emphasis added).  Black's Law Dictionary defines "individual" as "[o]f or relating to a single person or thing, as opposed to a group."  Black's Law Dictionary, 789 (8th Ed. 2004).  According to the online version of the American Heritage Dictionary, the first sense of the noun "individual" has two possible subsenses:  "(a) A single human considered apart from a society or community," or "(b) A human regarded as a distinctive or unique personality."  ttps://ahdictionary.com/word/search.html?q=individual.  The Britannica Dictionary defines the noun "individual" as "a single person," "a person who is considered separate from the rest of a group" and "a particular person."  https://www.britannica.com/dictionary/individual.  Thus, as shown by this survey of definitions, the common and approved usage of the term "individual" typically refers to a human or person.

Court considered whether § 303.10(a)(2) can be applied to cruelty to animals, the Court held that "the clear and unambiguous language of the enhancement provision for use of a deadly weapon directs the trial court to apply the enhancement when the defendant has used a deadly weapon 'in furtherance of the crime.' " *Commonwealth v. Hackenberger*, 836 A.2d 2, 4 (Pa. 2003).

After *Hackenberg*, however, the Sentencing Commission amended § 303.10(a)(2) by removing the phrase "in the furtherance of the crime" from the enhancement, limiting the enhancement's application to where the offender uses the deadly weapon "in a way that threatened or injured another individual." In its commentary, the Sentencing Commission explained that the deadly weapon possessed enhancement was applicable to cruelty to animals because no person was threatened or injured:

> The intent of the offender and the effect on the victim should be considered by the court in determining whether an act was threatening. The DWE/Used enhancement is intended to apply provision to circumstances in which a person is threatened or injured. **In cases where a weapon is used but no person is threatened or injured, such as in a case involving cruelty to animals, the DWE/Possessed enhancement applies**.

Sentencing Guidelines Implementation Manual, 158 (6th Ed. 2005) (emphasis added).[12]

---

[12] The Sixth Edition of the Sentencing Guidelines remined in effect until the Seventh Edition became effective December 28, 2012. Under the Seventh Edition, no amendments were made to § 303.10(a)(2), and the Sentencing

- 18 -

For all these reasons, we agree with Julian that the deadly weapon used enhancement should not have been applied to his aggravated cruelty to animals conviction, since no person was threatened or injured by his use of a deadly weapon. Because the trial court erred in applying the deadly weapon used enhancement rather than the possessed enhancement to Julian's aggravated cruelty to animals conviction, we vacate the judgment of sentence and remand for resentencing. *See Commonwealth v. Tavarez*, 174 A.3d 7, 11 (Pa. Super. 2017) (remanding for resentencing where trial court abused its discretion in applying the deadly weapon used enhancement rather than possessed enhancement to burglary conviction).[13]

Convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing with instructions. The Prothonotary is directed to remand the certified record to the trial court. Jurisdiction relinquished.

Judge Stabile joins the memorandum.

Judge Sullivan concurs in the result.

---

Commission provided the same commentary clarifying that in cases where a person is not threatened or injured, such as cruelty to animals, only the deadly weapon possessed enhancement would apply. *See* Sentencing Guidelines Implementation Manual, 192 (7th Ed. 2012).

[13] On remand, the trial court should also address whether cruelty to animals (count three) merges with aggravated cruelty to animals (count one) under Section 9765 of the Judicial Code, which provides that crimes may merge for sentencing purposes if they "arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S. § 9756.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/22/2023</u>